Chester S. PENDLETON

v.

Rebekah W. SARD.

Rodney V. LEACH

v.

Rebekah W. SARD.

Douglas I. GRINNELL

v.

Rebekah W. SARD.

Supreme Judicial Court of Maine.

Dec. 8, 1972.

890

Grossman, Faber & Miller "P. A.", by A. Alan Grossman, Barry M. Faber, Rockland, Collins & Crandall, by Wayne R. Crandall, Rockland, for plaintiff.

Eaton, Glass, Marsano & Hammond, by Francis C. Marsano, Belfast, Robert Hale, Washington, D. C., for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEBBER, Justice.

These three cases were consolidated for hearing before a Referee and were briefed and argued together on appeals to this Court by the defendant from judgments rendered against her in the Superior Court. Issues are raised which are not common to all three cases and therefore each case will be dealt with separately.

### Pendleton v. Sard

On the basis of supportive evidence, the Referee found that plaintiff, with the knowledge and consent of the defendant owner, furnished labor and materials which entered into the construction of defendant's dwelling house. Plaintiff alleged and proved full compliance with the provisions of 10 M.R.S.A., Secs. 3251 to 3255 inc., and became entitled to a lien therefor as found by the Referee. As to the dollar amount to be secured by lien, the fair and reasonable value of the lienable items necessarily had to be determined by evidence. Although the parties may by contract fix in advance what this fair and reasonable value of the items in place will be, no such contract was proven in this case. Thus it became proper to introduce evidence bearing on the question, "In what amount has the property been enhanced by the labor and materials furnished?" Bangor Roofing v. Robbins et al. (1955) 151 Me. 145, 148, 116 A.2d 664, 666.

As testimony was adduced it became evident that the plaintiff had applied a markup to cover profit and transportation. Although not separately lienable, they are proper factors for consideration in determining the fair and reasonable value of the lienable items incorporated into the property. Bangor Roofing v. Robbins et al., supra. In the course of the cross-examination of the plaintiff, the defendant's counsel was deprived by ruling of the Referee of the opportunity to inquire as to the hourly price actually paid by plaintiff to his workmen for their labor. This deprivation of the right of cross-examination on a material issue constituted prejudicial error. This error, however, adversely affects only the determination of the dollar amount secured by lien and in nowise taints the adjudication that plaintiff is justly entitled to a lien for the fair and reasonable value of the items which were shown by the evidence to have been furnished. The case must therefore be remanded for further hearing upon the sole issue of the fair value of the items heretofore properly determined to be lienable.

### Counterclaim—Sard v. Pendleton

The defendant Sard incorporated into her answer to plaintiff's complaint a counterclaim in effect asserting that the parties had entered into a contract by the terms of which Pendleton had agreed to construct defendant's house according to plans drafted by defendant's architect for a fixed price of $45,952. The defendant further asserted that plaintiff had failed to perform said contract to the damage of the defendant in the sum of $50,000.

The Referee found that the parties never entered into a valid and judicially enforceable contract and therefore gave judgment for plaintiff on the counterclaim. Under well established principles we treat the Referee's finding as final if supported by credible evidence and not otherwise erroneous as a matter of law.

The architect requested that Pendleton and another contractor furnish estimates based on preliminary drawings which he had made. In the case of Pendleton the architect himself prepared the estimate and produced a figure of $45,952 which Pendleton then adopted as his own estimate of the cost of completion. An estimate was also received from the other contractor which was somewhat higher than the architect's projection and was therefore rejected. The architect anticipated that in accordance with usual practice the estimate under normal conditions would come within 5 to 10% of actual completion cost. The preliminary drawings were not accom-

panied by specifications and furnished no information with respect to quantity and quality of materials, interior and exterior electrical work, water system, plumbing and sewage disposal system, painting and the like. These drawings merely portrayed one exterior facade of the proposed house and the basic floor plans of the first and second floors. The architect candidly admitted that a house could not be built from these drawings alone. Additional detailed working plans were required and in fact were furnished from time to time as the work progressed, but it is important to note that no such working plans existed when plaintiff submitted his estimate to the defendant. The architect also testified that the defendant owner had had no borings taken to determine the presence of ledge and that all parties proceeded on the assumption, based on a visual inspection of the site, that no ledge would be found. The subsequent discovery of ledge in areas requiring excavation proved to be one of several factors causing a substantial excess over estimate in the cost of construction.

It is unfortunate for both parties that plaintiff communicated his estimate to defendant by letter couched in somewhat ambiguous terms. On August 19, 1968 he wrote to inform her that he had "come up with a figure of ($45,952) for the complete job." It is apparent that both parties thereafter proceeded on the basis of erroneous assumptions. Pendleton had done work for Mrs. Sard on prior occasions and always on a time and materials rather than a fixed price basis. He seems to have assumed that the defendant would expect to pay on a time and materials basis and would understand, as did her architect, that his proposed figure was merely an estimate. The defendant, however, obviously assumed that she had received an offer to build at a fixed price, which offer she had accepted by orally directing plaintiff to proceed with the work. She seems to have attached no significance to the fact that her architect informed her that the "estimate" included an allowance of $1,000 for

a well but that it was "anyone's guess what a well will cost since it is a matter that cannot be foreseen." The words "complete job" were completely ambiguous as used on August 19, 1968 since at that time neither party had any information as to what would ultimately constitute a "complete job." Thus their minds cannot be said to have met with respect to this essential point. This becomes increasingly evident when we note that the defendant admits that as the work progressed, new directives were given from time to time with respect to work completed or in progress. She acknowledges an obligation to pay for at least some of this additional work as "changes" or "extras." But one is forced to ask, changes from what? The terms "changes" and "extras" are without legal significance until it can first be determined what the initial basic obligation of the building contractor was.

■ Based upon the foregoing considerations which we have summarized, the Referee found that no binding enforceable contract had been made by the parties upon which the plaintiff was obligated to the defendant. The Referee cited and relied upon Ross v. Mancini, (1950) 146 Me. 26, 76 A.2d 540 and Swan Co., Inc. v. Dean, (1955) 151 Me. 359, 118 A.2d 890. He quoted from the opinion in Corthell v. Thread Co., (1933) 132 Me. 94, 99, 167 A. 79, 81, as follows:

> "There is no more settled rule of law applicable to actions based on contracts than that an agreement, in order to be binding, must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liability of the parties. Indefiniteness may relate to the time of performance, the price to be paid, work to be done, property to be transferred, or other miscellaneous stipulations of the agreement."

The cited cases and the quoted statement of the law fully support the legal conclusions of the Referee as applied to the facts found. Although the Superior Court, in

accepting the Referee's report, did not deal explicitly with defendant's counterclaim, we treat the judgment rendered as implicitly including judgment for the plaintiff on the counterclaim. We discern no error in this result.

## Leach v. Sard

The plaintiff Leach by his complaint does not seek to impose a lien upon the defendant's premises but rather seeks recovery as upon quantum meruit for the fair value of "goods sold and delivered and labor performed" for the defendant. The Referee made no detailed findings but merely awarded judgment for the amount claimed in the complaint. Here again the test is whether or not there is credible evidence to support the Referee's conclusion.

Plaintiff was requested by Pendleton to do the excavation work on the site. Although the defendant knew of the work being performed on her premises by the plaintiff, there was no contractual relationship between them. Plaintiff submitted bills from time to time to Pendleton who in turn approved them and forwarded them to defendant's architect. Upon his approval, the bills were paid by the defendant to Pendleton who then paid Leach. When the defendant stopped making payments to Pendleton she declined to pay the last bill submitted by Leach to Pendleton. Leach has not as yet instituted any action against Pendleton for his unpaid balance but has proceeded directly against the defendant owner.

The general rule almost universally followed was well stated in 53 Am.Jur.2d 932, Mechanics' Liens, Sec. 418 in these terms:

" * * * it is generally recognized— *apart from unjust enrichment* * * * that subcontractors and materialmen have no right to a personal judgment against the owner where there is no contractual relation between them." (Emphasis ours.)

We recognized this as the rule in Maine when in Thompson v. Heald (1961) 157 Me. 78, 83, 170 A.2d 156, 160 we said, "It should be noted that no judgment is awarded against the owner where, as in the instant case, he never contracted with the plaintiff supplier but dealt only with his contractor."

Without elaboration or analysis a long line of cases has adhered to the general rule above stated, basing the rule on lack of privity of contract. Alberti v. Moore (1908) 20 Okl. 78, 93 P. 543; Seran v. Rose (1923—Okl.) 219 P. 940; Newman v. Kirk (1933—Okl.) 23 P.2d 163; Schram v. Manary (1927—Or.) 262 P. 263; Blossom Provine Lumber Co. v. Schumacher (1928—Wash.) 266 P. 167; Keefer v. Lavender (1952) 74 Ariz. 24, 243 P.2d 457; Brannan Sand & Gravel Co. v. Santa Fe Land & Imp. Co. (1958—Colo.) 332 P.2d 892; H.T.C. Corp. v. Olds (1971—Colo.) 486 P.2d 463; Gignilliat v. West Lumber Co. (1949) 80 Ga.App. 652, 56 S.E.2d 841; Drawdy v. McVeigh (1964) 110 Ga.App. 329, 138 S.E.2d 477; McCorkle v. Lawson & Co. (1953—Ky.) 259 S.W.2d 27; Gatchell v. Henderson (1952) 156 Neb. 1, 54 N.W. 2d 227; Walker v. Ball (1960—C.A. Ohio) 171 N.E.2d 541; Keeley Lumber & Coal Co. v. Dunker (1956—S.D.) 77 N.W.2d 689.

The statement of law above quoted, however, contained the phrase, "apart from unjust enrichment." Under what circumstances, then, do we attach meaning to that reservation or exception? The lien statute itself affords the security of a lien to a subcontractor under appropriate circumstances without regard to privity of contract. But the contractual debt secured by lien on the owner's property is in the case of a subcontractor ordinarily the debt owed him by the prime contractor. See Cole v. Clark (1893) 85 Me. 336, 27 A. 186; see Bangor Roofing v. Robbins et al. (1955) 151 Me. 145, 116 A.2d 664. And the lien statute itself make no provision for a personal judgment, absent privity of contract, in favor of the subcontractor and against the owner.

. In a few cases courts have come to grips with the logic or illogic of denying personal judgment merely because of lack of privity of contract—and with varying results. In Paschall's Inc. v. Dozier (1966) 219 Tenn. 45, 407 S.W.2d 150, 155 plaintiff supplied labor and materials incorporated into the premises of defendant owners at the request of defendants' daughter and grandson who also resided in the defendants' home. The complaint, the adequacy of which was tested by demurrer, alleged that the materials and services were furnished with the full knowledge and consent of defendants and that the latter had been unjustly enriched thereby. The Court began by carefully distinguishing between contracts implied in fact and contracts implied in law. The latter, commonly referred to as quasi contracts, are raised by the law on the basis of justice and equity regardless of the assent of the parties. The Court noted that "it is well established that want of privity between parties is no obstacle to recovery under quasi contract." Holding that plaintiff (having failed to perfect a lien) was entitled to a hearing on its complaint, the Court said:

"Based upon the foregoing authorities, we hold that where a materialman or subcontractor furnishes labor or materials which benefit the property of a person with whom there is no privity of contract, an action on quantum meruit may lie against the landowner to recover the reasonable value of said labor and materials so furnished. * * * Each case must be decided according to the essential elements of quasi contract, to-wit: A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.

"The most significant requirement for a recovery on quasi contract is *that the enrichment to the defendant be unjust.*

Consequently, if the landowner has given any consideration to any person for the improvements, it would not be unjust for him to retain the benefit without paying the furnisher. Also, we think that before recovery can be had against the landowner on an unjust enrichment theory, the furnisher of the materials and labor must have exhausted his remedies against the person with whom he had contracted, and still has not received the reasonable value of his services." (Emphasis ours.)

The importance we attach to the opinion in Paschall's, Inc. stems from the fact that it points up with some clarity that to deny quasi contractual recovery on the ground of *lack of privity of contract* is an oversimplification of the problem. On the other hand we note that none of the cases relied upon by the Tennessee Court as authority for affording recovery as upon a contract implied in law involved the intervention of a prime contractor between plaintiff subcontractor and the defendant owner. This suggests that we should look further for sound reasons, if any there be, for denying recovery under such circumstances.

In Guldberg v. Greenfield (1966—Iowa) 146 N.W.2d 298, 305, even though reliance was placed on lack of privity of contract, the Court in approaching directly the subject of unjust enrichment deemed it would be inequitable to permit a subcontractor to have a personal judgment against the owner where the owner had paid the prime contractor in full and the subcontractor's "predicament stems from (the prime contractor's) failure to pay him as agreed."

Leaving open the question as to "whether an unusual situation might arise under other facts, which would result in unjust enrichment unless subcontractors were permitted to recover (from owners) in quasi-contract," the Court in Lundstrom Construction Co. v. Dygert (1959) 254 Minn. 224, 94 N.W.2d 527, 533 concluded that no unjust enrichment would occur and hence

no quasi contractual recovery would be permitted where the owner in reliance upon lien waivers filed by the subcontractor paid the prime contractor for the labor and materials furnished by the subcontractor.

We think the Texas Court of Civil Appeals approached the problem realistically when it denied a subcontractor the right to a personal judgment without making any reference to the lack of privity of contract. In Crockett v. Sampson (1969—C.C.A. Tex.) 439 S.W.2d 355, 358 the Court said:

> "Liability on quantum meruit is based on a contract implied in law. An essential prerequisite to such liability is the acceptance of benefits by the one sought to be charged, rendered under such circumstances as reasonably to notify him that the one performing such services expected to be paid therefor by him, the person sought to be charged. * * *
>
> "There are no circumstances here which could have led appellee (subcontractor) to believe that anyone other than (the prime contractor) would pay him for the work and materials expended by him. *No equities in behalf of appellee (subcontractor) against appellant (owner) are shown.* There is no basis for a recovery in quantum meruit." (Emphasis ours.)

The Legislature, motivated without doubt by its own concept of "unconscionable and unjust enrichment," see Bangor Roofing v. Robbins et al., supra at page 148 of 151 Me., 116 A.2d 664, has seen fit to provide the security of a statutory lien which arbitrarily eliminates certain equities which might otherwise be available to the owner. The owner is, however, afforded some protection by (a) the rigid technical requirements imposed upon the lienor and (b) the avoidance by notice provisions of 10 M.R.S.A., Sec. 3252. The lien statute goes no further, however, and makes no provision for personal judgment other than for a deficiency as against one contractually indebted. 10 M.R.S.A., Sec. 3260. If the subcontractor is to be permitted a personal judgment against the owner, absent any contractual relationship, that can only occur as the result of judicial as opposed to legislative determination.

We cannot anticipate every factual situation that may arise but we conclude that under ordinary and usual circumstances the equities will not permit the supplier of labor and materials to obtain a personal judgment against the owner with whom he had no contractual dealings. Some of these equitable considerations have been adverted to in cases cited above. The prime contractor may already have been paid in full by the owner. The subcontractor may not have exhausted his remedies against the prime contractor. The subcontractor, with opportunity available to test the credit of the prime contractor, has elected to give the latter credit. The owner may naturally assume that suppliers dealing with the prime contractor will look to the latter for payment. Defenses which may be available to the prime contractor as against the supplier may not be known or available to the owner. Any one or a combination of these equitable considerations, and perhaps others raised by the facts, will tend to prevent any "enrichment" from being "unjust" and will thus militate against a quasi contractual obligation.

So in the instant case, as noted above, Leach was employed by Pendleton and looked to Pendleton for payment. He has not as yet sought to obtain a judgment against Pendleton. Mrs. Sard was justly entitled to assume that Leach would look to Pendleton rather than to her for his reasonable compensation. Although she has not as yet paid to Pendleton the amount which may be justly owed to Leach, she should be able to do so with assurance that she will not thereby be subjected to double recovery. It follows that no contract is implied in law and judgment below in the matter of Leach v. Sard must be set aside.

### Grinnell v. Sard

Plaintiff Grinnell by his complaint seeks to impose a lien upon defendant's property for labor and materials furnished in the course of the installation of plumbing facilities. The Court below accepted the report of the Referee and gave judgment for the lien.

 The complaint to enforce a lien was filed in court on January 5, 1970. One who would preserve the statutory lien afforded by 10 M.R.S.A., Sec. 3251 must comply with the mandate of 10 M.R.S.A., Sec. 3255 which requires that the complaint be filed "within 90 days after the last of the labor or services are performed or labor, materials or services are so furnished, and not afterwards". This would require in the instant case that such last item have been furnished not earlier than October 7, 1969. Electing not to follow the form of complaint found in Field, McKusick and Wroth, Maine Civil Practice, Vol. 1, Sec. 8.28, Page 213, the plaintiff filed a complaint which neither in the body thereof nor in the attached exhibits alleges the date when any item was furnished. The plaintiff has failed to allege or prove that any lienable item was furnished on or after October 7, 1969 as required.

In the very recent case of Bellegarde Custom Kitchens v. Arnold Leavitt et al. (Me.—1972) 295 A.2d 909, this Court held that the statutory requirement in Sec. 3255 is jurisdictional and, being substantive rather than procedural, is not affected by the adoption of the Maine Rules of Civil Procedure. Although the point was not raised below, this Court will note lack of jurisdiction evident upon the record on its own motion. It follows that the judgment rendered below must be set aside.

The entries will be

In Pendleton v. Sard

    Appeal sustained. Judgment vacated. New trial ordered limited to single issue as to dollar amount of lien.[1]

In Sard v. Pendleton (counterclaim)

    Appeal denied. Judgment for Plaintiff Pendleton affirmed.

In Leach v. Sard

    Appeal sustained. New trial ordered.

In Grinnell v. Sard

    Appeal sustained. Judgment vacated. Complaint quashed.[2]

All Justices concurring.

---

1. It should be noted that an error appears in the form of judgment rendered in the Superior Court. We construe the Referee's Report as awarding *judgment in rem* as for a lien. Although the presiding Justice in the Superior Court "accepted" that report, he erroneously entered a *personal judgment* for plaintiff. Any new judgment which may be entered after further hearing should conform to the requirements of 10 M.R.S.A., Secs. 3259 and 3260. See Maxim v. Thibault (1924) 124 Me. 201, 206, 126 A. 869; see Thompson Lumber Co. v. Heald et al. (1961) 157 Me. 78, 82, 170 A.2d 156.

2. In spite of the admonitions of this Court, the appellees, in designating certain additional portions of the record on appeal, included memoranda of law filed with the Superior Court. These memoranda have no place in the record and in taxing costs on appeal, the cost of including this material must be borne by the parties making the improper designation.