STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss CIVIL ACTION *5ᴸ*
DOCKET NO. RE-06-~~46~~,
~~JUN 30 P 1: 45~~ RE-06-07, CV-07-510
REC - C U M - 1/30/2008

CURTIS WALTER STEWART ARCHITECTS,
ALLIED/COOK CONSTRUCTION CORP. and
WHITE BROTHERS, INC.,

Plaintiffs

ORDER ON
v. CROSS MOTIONS FOR
SUMMARY JUDGMENT

JEFFREY COHEN,
WATERVIEW DEVELOPMENT, LLC and DONALD L. GARRR
ROBERT HAINS, L A W

Defendants FEB 1 5 2008

Before the Court are Cross Motions for Summary Judgment by Plaintiffs

Curtis Walter Stewart Architects, Allied/Cook Construction Corporation and

White Brothers, Inc., on the one hand, and Defendant Robert Hains, on the other,

on the issue of whether a mechanics' lien can be asserted against property owned

by Robert Hains.

## BACKGROUND

Defendant Robert Hains ("Hains") owns an unimproved parcel of

property located in downtown Portland (the "Subject Parcel"). In October 2003,

Hains agreed to lease the Subject Parcel to Defendant Waterview Development,

LLC ("Waterview") for a term of 99 years. Defendant Jeffrey Cohen ("Cohen") is

the President of Waterview and he personally guaranteed the lease.[1] Waterview

owned several parcels adjacent to the Subject Parcel and planned to build a

ninety-four unit condominium project on its combined lots and the Subject

---

[1] A Consent to Judgment and Order was entered into by Waterview and Cohen
on June 6, 2007 wherein Waterview and Cohen admitted to unconditional
liability for all amounts claimed by the Plaintiffs in this case.

Parcel. Pursuant to the terms of the lease, Waterview was to construct a building on the Subject Parcel within 36 months of the lease signing or the monthly lease payments to Hains would increase by twenty percent (20%). Hains admits that he was aware that Waterview planned a rental housing project, later the condominium project, although he maintains that he did not know the specifics of Waterview's plan nor did he care. Hains Deposition, page 27, lines 3-5; page 60, lines 10-14.

The lease executed by Hains and Waterview provides that Waterview shall be responsible for all construction, repairs and maintenance on the Subject Parcel. Section 6(a) of the lease states in relevant part:

> Tenant shall construct a building on the demised premises or on land of Tenant immediately adjacent to demised premises...within thirty-six (36) months from the Commencement Date.

Section 6(d) states in relevant part:

> Tenant may, at its option and without prior Landlord approval and at its own cost and expense, at any time and from time to time...make such alterations, changes, replacements, improvements and additions in and to the demised premises, and the buildings and improvements thereon...as it may deem desirable, including the construction, enlargement, modification, removal, replacement or demolition of any building(s) and [sic] situated or erected on the demised premises.

The lease further provides that Waterview shall indemnify Hains for all expenses related to any mechanics' lien placed on the property ("If, because of any act or omission of Tenant, any mechanic's lien...shall be filed against Landlord or any portion of the demised premises, Tenant shall, at its own cost and expense, cause the same to be discharged...").

Beginning in Fall 2004, Waterview began the process of obtaining the necessary permits and approvals for the condominium project. On October 26,

2

2004, Waterview presented its plan to the City of Portland Planning Board, including a presentation by Ben Walter ("Walter"), an architect with the Plaintiff Curtis Walter Stewart Architects ("CWS"), which included graphics and plans of the condominium project. While Hains did not receive any materials directly from Waterview or CWS, he did pick up a packet of materials available for the Planning Board meeting. After reviewing these materials, Hains expressed concern to Cohen about the proposed layout of a driveway and to the Planning Board at the meeting. Hains also picked up a packet of materials for a second Planning Board meeting on November 9, 2004 and made a comment during this meeting. Hains also attended four other meetings before the Planning Board over the following months relating to the Waterview condominium project and was provided with documents from CWS upon approval of the project.

Plaintiff Allied/Cook Construction Corporation ("Allied") served as general contractor and construction manager for the condominium project. On August 25, 2005, there was a groundbreaking ceremony at the project site, which Hains was invited to and attended. Thereafter, Hains drove past the construction site on occasion and saw a sign that identified Allied as the construction manager and CWS as the architect for the project. Hains also admitted seeing debris hauled from the site, a trailer on the Subject Parcel and fencing around part of the Subject Parcel.

Work on the condominium project stopped before any foundation was laid due to the financial difficulties of Waterview. Thereafter, CWS, Allied and White Brothers, Inc. filed suits against Waterview, Cohen and Hains seeking, inter alia, a mechanics' lien. Hains filed a Motion for Summary Judgment on all claims asserted against him. CWS opposed this Motion and filed its own Motion

3

for Summary Judgment on its mechanics' lien claim against Hains. Allied joined in CWS's Motion and in addition filed its own briefs and Statement of Material Facts. White Brothers, Inc. also joined in CWS's Motion, but did not make any further filings with the Court, instead stating that its "legal rights...are equivalent to the mechanic [sic] lien rights" of CWS.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126. "A court may properly enter judgment in a case when the parties are not in dispute over the [material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A genuine issue of material fact exists "when the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93 ¶ 9, 878 A.2d 504, 507. An issue of fact is material if it "could potentially affect the outcome of the suit." *Id.* An issue is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

## DISCUSSION

Mechanics' liens are available to "[w]hoever performs labor or furnishes labor or materials...used in erecting, altering, moving or repairing a house, building or appurtenances...by virtue of a contract with or by consent of the

4

owner" in order "to secure payment thereof." 10 M.R.S.A. § 3251 (2007). "A lien is given upon the ground that the work has been a benefit to the realty, and has enhanced its value." *Combustion Engineering, Inc. v. Miller Hydro Group*, 577 A.2d 1186, 1188 (Me. 1990), quoting *Bangor Roofing & Sheet Metal Co. v. Robbins Plumbing Co., Inc.*, 151 Me. 145, 148, 116 A.2d 664, 666 (1955). In this case, it is undisputed that neither CWS nor Allied contracted with Hains to provide any labor or materials. Accordingly, the two questions before this Court are whether Hains consented to CWS's and Allied's work within the meaning of the statute and the value of the lien, if any, to be charged to Hains' property.

### A. Hains' Consent to the Work of CWS and Allied

At oral argument, the attorneys for CWS, Allied and Hains stipulated that the facts before this Court are undisputed as they relate to the question of Hains' consent. Accordingly, all three agreed that this Court should decide the issue of whether or not Hains consented to the work done by CWS and Allied.

The Law Court has acknowledged that the question of consent is very fact-specific and depends on the facts of each case. *Id.* at 207; 182 A.2d at 475 ("It has been generally held that whether consent appears in any given case depends wholly upon the facts in that case"). However, the Law Court has offered some instruction for determining whether or not consent exists in the case of a lease, stating:

> The consent of the owners [landlord] must be inferred from the language of the lease, ... [the landlord's] knowledge of what was contemplated and was actually being done, and ... [the landlord's] conduct.

*Fischbach & Moore, Inc. v. Presteel Corp.*, 398 A.2d 397, 400 (Me. 1979), quoting *Maxim v. Thibault*, 124 Me. 201, 203, 126 A. 869, 871 (1924) (brackets in original).

5

In the instant case, the lease explicitly states that Waterview shall construct a building on the Subject Parcel or the base rent price will increase. Moreover, Hains had knowledge that work was occurring at the Subject Parcel and that that work was being done by CWS and Allied, although it is undisputed that Hains had no role in choosing either CWS or Allied to work on the project. While Hains is correct that neither CWS nor Allied included him in their discussions with Waterview concerning the project nor were they required to provide him with updated materials concerning the project, Hains attended six meetings before the Planning Board at which the project was discussed and he obtained materials available to the public during those meetings. In fact, Hains even made a suggestion at one meeting that the placement of a proposed driveway be moved, which shows that he was familiar with the plans for construction at the property. Hains also admitted that he saw some construction being done at the Subject Parcel and that a sign was posted on the property that stated that construction was being done by Allied and that CWS was the architect for the project.

Hains argues that any information he learned about the condominium project at the Planning Board meetings cannot be considered by this Court because Hains attended those meetings solely in his capacity as a "concerned citizen of Portland" as he has done for the past twenty years and not because he was an interested person. The Court rejects this argument because Hains did know the nature and extent of work that was contemplated and was actually being done on his property by both CWS and Allied. Contrary to Hains' argument, knowledge cannot be compartmentalized and it is clear that regardless of whether Hains gained knowledge of CWS's and Allied's work as an

6

interested party or merely as a concerned citizen, he knew about the work being done and did not object.

Hains' conduct justified CWS's and Allied's belief that he consented to the work being done. Indeed, there were six separate meetings of the Planning Board at which members of the public could comment on the proposed condominium project. That Hains recognized this is evident in the fact that he actually made public comments on separate occasions at these meetings, including suggesting a modification of a driveway layout. Moreover, Hains admitted that he witnessed construction occurring at the Subject Parcel yet he never objected in any respect to the work being done.

The Court rejects Hains' argument that by the time he had knowledge of CWS's work in Fall 2004 (when CWS first appeared before the Planning Board), much of CWS's work had already been completed and, therefore, Hains could not have consented to CWS's work. The evidence shows that CWS's work was ongoing until at least September 2005 (when final project approval was obtained) and Hains knew of the revisions, modifications and additions in CWS's work because he was present at the six Planning Board meetings held in 2004 through 2005. Moreover, Hains never objected to any of CWS's work even after he had knowledge of what work had been done. Nor did the work of CWS and Allied go beyond that known and expected by Hains when he agreed to the lease terms with Waterview. Indeed, the lease expressly states that Waterview was to construct a building on the Subject Parcel or else Waterview's monthly rent would increase; Hains admitted that he was aware that Waterview planned some sort of housing or condominium building. Thus, any attempt to limit the scope

7

of Hains' knowledge and consent to the work done by CWS and Allied is rejected by this Court.

Based on the express language of the lease, Hains' knowledge of the work to be done and the work occurring at the property, and his conduct, Hains did consent to CWS and Allied furnishing labor and materials for the condominium project that included the Subject Parcel. Accordingly, CWS's, Allied's and White Brothers, Inc.'s Motions for Summary Judgment are granted in part on the issue of Hains' consent.

### B. Value of the Mechanics' Lien

The Law Court has stated that "[w]hen, as here, the owner is not party to the contract, the determination must be as to what is the fair and reasonable value of the labor and materials in place. In what amount has the property been enhanced by the labor and materials furnished?" *Bangor Roofing*, 151 Me. 145, 148, 116 A.2d 664, 666 (1955). The Law Court has further stated that this "determination is primarily one of fact." *Id.* at 150, 116 A.2d at 667. This rule stems from the cornerstone of mechanics' lien law, which is "the prevention of unconscionable and unjust enrichment." *Id.* at 148; 116 A.2d at 666. Thus, "[a] lien is given upon the ground that the work has been a benefit to the realty, and has enhanced its value." *Id.*

In *Bangor Roofing*, a subcontractor supplied labor and materials for the construction of a school building. *Bangor Roofing*, 151 Me. at 146, 116 A.2d at 665. With its complaint, the subcontractor attached an itemized list of labor and materials that represented its actual cost for those items and the subcontract price. *Id.* at 146-47, 116 A.2d at 665. The Law Court, however, held that because there was no express contract between the subcontractor and the property

8

owner, the subcontractor was not automatically entitled to its subcontract price.

*Id.* at 148-49, 116 A.2d at 666. The Law Court stated:

> When by express contract the parties fix the compensation to be paid for full and complete performance of the contract, they have themselves established the debt to be secured by lien...[but where] the owner is not party to the contract, the determination must be as to what is the fair and reasonable value of the labor and materials in place...Where, as here, the subcontractor has a fixed price contract with another contractor who stands between him and the owner, we think the price agreed upon represents a ceiling upon this fair and reasonable price, and it would be inequitable to permit a lien in excess of the subcontract price. But where the fair and reasonable value appears to be less than the subcontract price, the latter must yield to the former in submission to the test as to the extent the property has been enhanced. A subcontractor then cannot assume that he has a lien for the amount of his subcontract in all cases, but he may rely upon the lien security to protect the payment contracted for provided the fair value of what he furnishes at least equals that amount.

*Id.* The Law Court also rejected the argument that the value of any lien should be determined by actual costs as opposed to fair and reasonable value. *Id.* at 151, 116 A.2d at 667 ("Defendants cite no case holding that actual costs are the measure of lien rather than fair and reasonable value").

The Law Court again held that fair and reasonable value is the measure of a mechanics' lien when there is no contract in *Pendleton v. Sard*, 297 A.2d 889 (Me. 1972), stating:

> As to the dollar amount to be secured by lien, the fair and reasonable value of the lienable items necessarily had to be determined by evidence. Although the parties may by contract fix in advance what this fair and reasonable value of the items in place will be, no such contract was proven in this case. Thus it became proper to introduce evidence bearing on the question, "In what amount has the property been enhanced by the labor and materials furnished?"

*Pendleton*, 297 A.2d at 891, quoting *Bangor Roofing*, 151 Me. at 148, 116 A.2d at 666. The Law Court further stated:

> The general rule almost universally followed was well stated in 53 Am.Jur.2d 932, Mechanics' Liens, Sec. 418 in these terms: * * * it is generally recognized – *apart from unjust enrichment* * * * that subcontractors and materialmen have no right to a personal judgment against the owner when there is no contractual relation between them.

*Id.* at 893 (ellipses and emphasis in original).

It is undisputed that Hains was not a signatory to either the CWS or the Allied contracts. Thus, in determining the amount of CWS's and Allied's liens against the Subject Parcel, this Court must determine the fair and reasonable value of each CWS's and Allied's work on the property. The parties, however, disagree as to what constitutes the "property." Hains argues that the Court should only consider the value and benefit to his lot alone. CWS and Allied, on the other hand, argue that the Court must determine value as to the entire condominium project, which they describe as a unified project. CWS and Allied allege, and there is no evidence to the contrary, that they did not allocate or apportion their work between Hains' lot and the lots owned by Waterview.

Maine law offers no guidance on this issue. The law of other jurisdictions likewise offers no bright line for determining the scope of "property." *Compare W.H. Dail Plumbing, Inc. v. Roger Baker and Associates, Inc.*, 308 S.E.2d 452, 454 (N.C. Ct. App. 1983) ("It would be grossly inequitable to allow a blanket lien holder to enforce the entire lien against one unit of a multi-unit condominium project. Each unit shall be liable only for its proportionate share...") *with Menzel v. Tubbs*, 53 N.W. 653, 654 (Minn. 1892) ("What the word 'lot' in the lien statute means has been several times considered by this court, and it has always been

10

held that it is not synonymous with city lot or platted lot, but that it may include more and may include less than a lot as platted").

However, several states have established a rule that a blanket mechanics' lien imposed on severally owned lots is appropriate only when apportionment is not possible or practical. *See, e.g., Compass Bank v. The Brickman Group, Ltd.*, 107 P.3d 955, 958 (Colo. 2005) (Colorado law permits "a single lien claim against all such buildings, structures, or other improvements (together with the ground upon which they are situated), if the cost or value of the labor or materials cannot be readily and definitely apportioned; and in that case, all of the improvements are deemed one improvement, and the land on which they are situated, one tract of land"); *Northwest Fed'l Savings & Loan v. Tiffany Construction Co.*, 761 P.2d 174, 177 (Ariz. Ct. App. 1988) ("Courts are more likely to uphold a blanket lien if the labor or materials are supplied under a lump-sum contract and not allocated among buildings or lots, if the materials are delivered to a general construction site and not to individual buildings and lots, and if the buildings are intended for a common purpose and located upon contiguous lots...A blanket lien is appropriate when a laborer or materialman is unable to allocate his improvements among the particular buildings or lots"); *Addington-Beaman Lumber Company, Inc. v. Lincoln Savings and Loan Ass'n*, 403 S.E.2d 688, 690 (Va. 1991) ("[U]nder certain circumstances, a joint and blanket lien is valid and the lien claimant has no duty to apportion in the memorandum the amount of the lien. Such circumstances exist when there is a single contract for the entire work to be performed on the subject property as a whole, and there are no provisions in the agreement allocating a specific portion of the contract price to any individual lot...Under the circumstances of this case, the mechanic or supplier

11

had the duty to apportion the amounts due among the several lots benefited, the evidence establishing that the materials furnished have added disproportionate values to the individual lots").

For purposes of this case, the Court adopts the rule that a blanket mechanics' lien is available only when the lienor cannot apportion or allocate the goods or services he has provided. Accordingly, this Court must deny CWS's and Allied's Motions for Summary Judgment because there is a genuine issue of material fact as to whether it is possible for either or both to apportion the work performed between the Subject Parcel and the lots owned by Waterview. If apportionment is not possible, the trier of fact must determine the value of each CWS's and Allied's work to the entire condominium project. If apportionment is possible, the trier of fact must determine the value of the work done to Hains' property alone. Thus, there remain two factual determinations in this case: first, whether apportionment is possible; and, second, the extent to which the property, either the Subject Parcel alone or the combined lots constituting the condominium project, has been enhanced by the labor and materials furnished by CWS and Allied.

Therefore, the entry is:

> Plaintiffs Curtis Walter Stewart Architects', Allied/Cook Construction Corporation's and White Brothers, Inc.'s Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART. The Motions are granted as to the issue of Hains' knowledge and consent to their work and denied as to the determination of the value of the lien that can be imposed on Hains' property.
>
> Defendant Robert Hains' Motion for Summary Judgment is DENIED.

12

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this \_\_30th\_\_ day of \_\_\_\_\_January\_\_\_\_\_, 2008.

Robert E. Crowley
Justice, Superior Court

CURTIS WALTER STEWART ARCHITECTS - PLAINTIFF

Attorney for: CURTIS WALTER STEWART ARCHITECTS
JOHN HOBSON   - RETAINED 03/13/2006
PERKINS THOMPSON HINKLEY & KEDDY
ONE CANAL PLAZA
PO BOX 426
PORTLAND ME 04112-0426



vs
WATERVIEW DEVELOPMENT II CORP (RE-06-07) - DEFENDANT
JEFFREY COHEN  - DEFENDANT

Attorney for: JEFFREY COHEN
DAVID RAY   - RETAINED 06/06/2006
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029


WATERVIEW DEVELOPMENT LLC - DEFENDANT

Attorney for: WATERVIEW DEVELOPMENT LLC
DAVID RAY   - RETAINED 06/06/2006
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029


ROBERT C HAINS   - DEFENDANT

Attorney for: ROBERT C HAINS
DEBORAH MANN   - RETAINED 06/21/2006
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112


BECKER STRUCTURAL ENGINEERS INC - PARTIES IN INTEREST
NORWAY SAVINGS BANK - PARTIES IN INTEREST

Attorney for: NORWAY SAVINGS BANK
MICHAEL HILL   - RETAINED 05/09/2006
MONAGHAN LEAHY LLP
95 EXCHANGE ST
PO BOX 7046
PORTLAND ME 04112-7046


NORMAN G. COHEN INC - PARTIES IN INTEREST

Attorney for: NORMAN G. COHEN INC
DAVID RAY  - RETAINED 05/23/2006
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729

**DOCKET RECORD**

PORTLAND ME 04104-5029

WHITE BROTHERS INC - PARTIES IN INTEREST

Attorney for: WHITE BROTHERS INC
DAVID PERKINS  - RETAINED 05/17/2006
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449

ALLIED/COOK CONSTRUCTION CORP(PLTF RE-06-07) - PARTIES IN INTEREST

Attorney for: ALLIED/COOK CONSTRUCTION CORP(PLTF RE-06-07)
MICHAEL TRAISTER  - RETAINED 05/26/2006
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085

THE CITY OF PORTLAND - PARTIES IN INTEREST

Attorney for: THE CITY OF PORTLAND
PENNY LITTELL  - RETAINED 05/10/2006
CITY OF PORTLAND
389 CONGRESS STREET
PORTLAND ME 04101


Filing Document: COMPLAINT                    Minor Case Type: MECHANICS LIENS
Filing Date: 03/10/2006

## Docket Events:

03/10/2006 FILING DOCUMENT - COMPLAINT FILED ON 03/10/2006
           WITH EXHIBIT 1 AND SUMMARY SHEET. AD

03/13/2006 Party(s): CURTIS WALTER STEWART ARCHITECTS
           ATTORNEY - RETAINED ENTERED ON 03/13/2006
           Plaintiff's Attorney: JOHN HOBSON

04/26/2006 CERTIFY/NOTIFICATION - CLERK CERTIFICATE ISSUED ON 04/19/2006
           ORIGINAL ATTESTED CLERKS CERTIFICATE MAILED TO ANDREW CADOT, ESQ. ON THIS DATE; COPY IN
           FILE; NO COPY GIVEN TO CUMBERLAND COUNTY REGISTRY OF DEEDS (JBG).

05/08/2006 Party(s): CURTIS WALTER STEWART ARCHITECTS
           SUMMONS/SERVICE - ACCEPTANCE OF SERVICE FILED ON 05/08/2006

05/08/2006 Party(s): CURTIS WALTER STEWART ARCHITECTS
           SUMMONS/SERVICE - ACCEPTANCE OF SERVICE SERVED ON 05/04/2006
           UPON NORWAY SAVINGS BANK TO MICHAEL H. HILL ESQ (GM)

05/09/2006 Party(s): NORWAY SAVINGS BANK
           RESPONSIVE PLEADING - ANSWER FILED ON 05/09/2006