STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.: RE-19-30
RE-19-34
RE-19-38
RE-19-43
(Consolidated)

ROBERT H. BENNETT d/b/a R.H.
BENNETT & SONS CONSTRUCTION
and RH BENNETT AND SONS
CONSTRUCTION LLC,

Plaintiffs

v.

MINGJING INDUSTRIAL GROUP
AGRICULTURAL TECHNOLOGY
CO. LLC and MINGJING
INDUSTRIAL GROUP LTD. USA,
LLC and MINGJING INDUSTRIAL
GROUP CO. LTD.,

Defendants

------------

NORTHERN LIGHTS MECHANICAL,
LLC,

Plaintiff

v.

MINGJING INDUSTRIAL GROUP
AGRICULTURAL TECHNOLOGY
CO. LLC, et al.,

Defendants

------------

ORDER ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

OCT 21 '21 PM4:04
ANDRO SUPERIOR COURT

1

HANCOCK LUMBER COMPANY,
INC.,

        Plaintiff

    v.

MINGJING INDUSTRIAL GROUP
AGRICULTURAL TECHNOLOGY
CO. LLC, et al.,

        Defendants

------------

PD DRYWALL, LLC,

        Plaintiff

    v.

MINGJING INDUSTRIAL GROUP
AGRICULTURAL TECHNOLOGY
CO. LLC, et al.,

        Defendants

The matter before the court is Defendant Mingjing Industrial Group Agricultural Technology Co. LLC's ("Mingjing") motion for summary judgment in all of the consolidated lawsuits. For the following reasons, the motion will be denied.

Background

Mingjing is a limited liability company in Auburn, Maine. (Supp.'g S.M.F. ¶ 1.) In July of 2018, Mingjing signed two contracts with Robert H. Bennett d/b/a R.H. Bennett & Sons Construction ("Bennett") to serve as a general contractor to build two houses in Auburn. (*Id.* ¶ 3.) Pursuant to the first contract, dated July 18, 2018, Bennett agreed to build a single-family home and attached garage at 694 Main Street, Auburn, Maine, (since renamed 12 Mingjing Lane) for a price of $421,763.57. (*Id.* ¶ 5.) The second contract, dated July 27, 2018, was also

for a single-family home located at 694 Main Street, Auburn, (since renamed 28 Mingjing Lane) for a price of $730,028.21. (*Id.* ¶ 6.) Both contract prices are expressly subject to additions and deductions as provided by the contracts. (Trustee's Ex. 3, at 21; Trustee's Ex. 4, at 29.)

Both contracts contained the following provision regarding change orders:

> 4.     CHANGE ORDERS: Owners reserve the right to order work changes in the nature of additions, deletions, or modifications, and agree to make corresponding adjustments in the contract price and completion date. Any alteration or deviation from the above contractual specifications that results in a revision of the estimated contract price will be executed only upon the parties entering into a written change order. Each change order must detail changes to the original Agreement that result in a revision of the contract price and must state the previous contract price and the revised contract price. Each change order must be agreed to and signed by both parties prior to commencement of work involved in the change order.

(*Id.* ¶ 12.) Bennett and Mingjing agreed to several change orders to the contracts, following the change order procedure in the above contract provision. (*Id.* ¶ 14.) All of these change orders were timely paid. (*Id.* ¶ 15.)

The contracts both name an estimated completion date of January 31, 2019, subject to certain conditions.[1] The contracts further provide:

> 7.     DELAY IN PERFORMANCE: In the event that the Contractor is delayed at any time in the progress of the work by changes in the work, by the lack of readiness of the job site, by the unavailability of building materials, by labor disputes, fire, unusual delays in transportation, unavoidable casualties, or any other conditions beyond the Contractor's control, then the time for completion of the work shall be extended for such reasonable period as is necessary. The Contractor will notify the Owner immediately in writing of any substantial delay in completion of the project including reasons with revised completion date.

(Trustee's Ex. 3, at 23; Trustee's Ex. 4, at 31.) The contracts leave material selection to Mingjing, providing that "the estimates incorporated herein provide for allowances for certain

---

[1] Mingjing characterizes this date as a binding deadline. (*See* Mot. Summ. J. 5.) The court can find no support for this claim, as the contract provision containing the January 31, 2019 date is titled "Estimated Commencement & Completition Date" and only states that the contractor "expects" to complete the work by January 31, 2019, subject to conditions enumerated in a separate paragraph. (Trustee's Ex. 3, at 22; Trustee's Ex. 4, at 30.)

materials to be incorporated into the project as selected by the Owner . . . materials selected by them will determine the actual cost to the Owner for such materials, which actual cost may be more or less than the amount shown on the estimates as allowances." (Supp.'g S.M.F. ¶¶ 5-6; Trustee's Add. S.M.F. ¶¶ 45-46.)

Work on the contracts continued well after the estimated January 31, 2019 completion date specified in the contracts. On January 24, 2019, Bennett sent a letter to Mingjing describing the status of the projects and explaining the delays.[2] (Trustee Add. S.M.F. ¶ 48.) The letter projected completion dates of April 31, 2019 for 28 Mingjing Lane and May 30, 2019 for 12 Mingjing Lane, subject to further delays from weather and subcontractor scheduling. (*Id.*) Bennett continued work on the projects and Mingjing continued to make payments until May 1, 2019. (*Id.* ¶ 49.)

A Certificate of Occupancy for 28 Mingjing Lane was issued by the City of Auburn on June 7, 2019. (*Id.* ¶ 50.) Bennett ceased work on both projects afterwards, as Mingjing had ceased making payments. (Trustee's Resp. Supp.'g S.M.F. ¶ 19; Supp.'g S.M.F. ¶ 19.) Mingjing never made any further payments and work on the projects never resumed. (*Id.* ¶ 20.)

Bennett recorded a mechanic's lien on 12 Mingjing Lane on September 9, 2019 in the Androscoggin County Registry of Deeds at Book 10176, Page 54. (Trustee Add. S.M.F. ¶ 52.) Bennett also recorded a mechanic's lien on 28 Mingjing Lane on the same day, in the Androscoggin County Registry of Deeds at Book 10176, Page 57. (*Id.* ¶ 53.) Three of Bennett's subcontractors also filed mechanic's liens against the properties; Hancock Lumber Company, Inc. ("Hancock Lumber"), Northern Lights Mechanical, LLC ("Northern Lights"), and PD

---

[2] Mingjing claims that this letter was not "accepted or agreed to" by Mingjing and that it was not a valid change order under the contracts. (Resp. Trustee Add. S.M.F. ¶ 47.) The Trustee does not claim that the letter was a change order. (*See* Trustee Add. S.M.F. ¶ 48.)

Drywall, LLC ("PD Drywall"). (Supp.'g S.M.F. ¶ 22.) Mingjing never had a direct contractual relationship with any of Bennett's subcontractors, nor has it ever directly paid or promised to pay them. (*Id.* ¶¶ 24-26.) Bennett and the three subcontractors subsequently filed lawsuits to enforce these liens and seeking recovery on other grounds, which have all been consolidated into this lawsuit.

Bennett has filed for Chapter 7 bankruptcy since initiating this lawsuit. (*Id.* ¶ 37.) The Chapter 7 Interim Trustee in Bankruptcy has intervened in this lawsuit to continue pursuing the claim. (*See* Opp. Mot. Summ. J. 2.)

Standard

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). In order to controvert an opposing party's factual statement, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2).

Discussion

Mingjing has moved for summary judgment in all four consolidated lawsuits. Mingjing raises four issues. First, Mingjing argues that there is no issue of material fact remaining as to whether Mingjing owed Bennett any money under the contract. Second, Mingjing argues that all

5

of the subcontractors' claims are barred by the double payment defense provided by the mechanic's lien statute, 10 M.R.S. § 3255(3) (2020). Third, Mingjing argues that there are no issues of material fact as to Bennett and Northern Lights' claims under the Prompt Payment Act, 10 M.R.S. §§ 1111-1120. Fourth, Mingjing claims that it cannot be sued under a theory of unjust enrichment by Bennett or any of the subcontractors.

Balance Owed

Mingjing begins by simply stating that it does not owe any money to Bennett under the contract, and so the Trustee's claim must fail as a matter of law. Mingjing claims that the contracts were both for a fixed price and required all modifications to be done through a written change order process provided for by the contract. This, Mingjing argues, shows that Bennett's invoices submitted after May 1, 2019, which the parties agree were not issued pursuant to a change order, were not supported by the contracts and therefore Mingjing has no obligation to pay them. The Trustee argues that the contracts were not fixed price and specifically contemplated that materials costs may increase or decrease the final price depending on Mingjing's selections. Further, the Trustee argues, even if the contract were for a fixed price, contractors can still recover for work fully performed under the doctrine of implied contract, even if the contract requires all changes be in writing.

There is still an issue of material fact as to the balance owed. The contract specifically allows for adjustment to the price to reflect the value of materials selected by Mingjing and the cost of electricity used during construction. (Trustee's Ex. 3, at 21; Trustee's Ex. 4, at 29.) Thus, whether Mingjing owes a balance on these amounts is not determined by the contract price and remains a triable issue.

6

The trustee is correct to point out that even if Bennett's work was entirely outside the scope of the contract the Trustee may still be able to recover in implied contract. The Law Court has specifically addressed this issue, holding that a provision that requires all changes to the contract involving extra costs be in writing does not preclude a contractor for recovering for extra work that was fully performed. *Runnells v. Quinn*, 2006 ME 7, ¶ 9, 890 A.2d 713. "A valid claim in quantum meruit requires: that (1) services be rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Id.* ¶ 10.

There remain triable issues as to whether Bennett was performing work under an implied contract, as he clearly rendered services to Mingjing with its knowledge. Whether he did so with Mingjing's consent and under circumstances that made it reasonable for him to expect payment are questions of fact that preclude summary judgment.

Double Payment Defense

Mingjing asserts the double payment defense against all of the subcontractors' claims. This defense, provided by 10 M.R.S. § 3255(3), insulates homeowners who have already paid a general contractor in full from subcontractors who seek to enforce mechanic's liens. The Law Court has described how the defense works as follows:

> The Mechanics' Lien Statute affords a "double payment" defense to a homeowner when persons who have furnished material and services independently to the homeowner's contractor seek enforcement of their liens. No obligation arises on the part of the homeowner to such materialmen until after receipt of a notice of the lien. After the homeowner's receipt of a notice of the lien, the statute provides that the lien may be enforced against the property affected to the extent of the "balance due" by the homeowner to the person with whom he has directly contracted. This provision sets up the maximum pool from which the subcontractors can seek enforcement of their liens.

*Pond Cove Millwork Co. v. Steeves*, 598 A.2d 1181, 1182 (Me. 1991). The statute excludes from this defense situations "where labor, materials or services are performed or furnished to the premises for a business, commercial or industrial purpose unless the owner resides on the premises affected." 10 M.R.S. § 3255(3).

There remain issues of material fact as to the double payment defense. This is mostly for the same reasons articulated in the previous section; there is still an issue of material fact as to what, if any, balance is owed on the contract. Mingjing cannot assert the double payment defense against Bennett's subcontractors unless it is established that it has already paid Bennett in full.

The plaintiffs ask the court to rule as a matter of law that the double payment defense affirmatively does not apply to Mingjing based on the exception for construction projects with a "business, commercial or industrial purpose." 10 M.R.S. § 3255(3). The court declines. The parties dispute what the purpose of the project was, with Bennett averring he understood the project to be a commercial mushroom growing operation with one of the houses serving as housing for Mingjing's principal's staff and Mingjing's principals averring that the intention was always for them to live in the houses. (*See* Trustee Add. S.M.F. ¶¶ 41-42; Supp.'g S.M.F. ¶¶ 8-9.) This is a factual dispute, and where the intention of the project is still an issue of material fact, the court cannot rule on the applicability of the double payment defense as a matter of law.

Prompt Payment Act

Mingjing has argued that it cannot be liable to the Trustee or Northern Lights under the Prompt Payment Act. Mingjing's argument with respect to the Trustee is simply that it has already paid Bennett in full. For the same reasons stated before, this argument fails. However, as to Northern Lights, Mingjing argues that the Prompt Payment Act cannot be used by

subcontractors against an owner they provided materials and services to but never directly contracted with.

The owner's payment obligations under the Prompt Payment Act are provided by 10 M.R.S. § 1113 (2020). Section 1113 requires the owner to pay the contractor strictly in conformance with their contract, but it makes no mention of subcontractors. Contractors are required to pay their subcontractors in a similar manner by 10 M.R.S. § 1114, but there is no basis in the Prompt Payment Act for a subcontractor to assert a claim for payment against the owner. Mingjing's motion for summary judgment will be granted against Northern Lights's Prompt Payment Claim as set forth in Count IV.

Unjust Enrichment

Mingjing argues that the Trustee's claims in quasi-contract cannot survive summary judgment because there are two valid contracts between Mingjing and Bennett. Mingjing cites *Nadeau v. Pitman*, 1999 ME 104, 731 A.2d 863, for the proposition that the existence of a contractual relationship precludes recovery on a theory of unjust enrichment. That is a correct statement of the law. However, the parties are disputing payments for invoices that were arguably made outside of the contracts between Mingjing and Bennett. In fact, that is Mingjing's express position. As *Runnells* makes clear, payment for work fully performed but not covered by the contracts may be recoverable on equitable grounds. Therefore, Mingjing's motion for summary judgment against the Trustee will be denied.[3]

Mingjing raises an additional argument with respect to Bennett's subcontractors. Mingjing cites *Pendleton v. Sard*, 297 A.2d 889 (Me. 1972), for the proposition that "under ordinary and usual circumstances the equities will not permit the supplier of labor and materials

---

[3] Mingjing also asserts that it has paid Bennett in full, so no claim for unjust enrichment could succeed. As previously stated, this remains an issue of material fact.

to obtain a personal judgment against the owner with whom he had no contractual dealings." *Id.* at 895. Thus, Mingjing argues, the subcontractors' equitable claims fail as a matter of law.

Mingjing misunderstands the law. As the Law Court explicitly stated in *Pendleton*, there is no privity of contract requirement for equitable recovery. *See Id.* at 894 ("to deny quasi contractual recovery on the ground of lack of privity of contract is an oversimplification of the problem"). While it is true that under normal circumstances the balance of the equities will not favor recovery by a subcontractor against an owner on equitable grounds, it is also true that this determination requires a balancing of the equities in the situation. *Id.* at 895. This is a factual question. *Id.* As such, the court finds that there are still issues of material fact and will deny Mingjing's motion for summary judgment.

The entry is

> Mingjing's Motion for Summary Judgment is DENIED as to all counts except Northern Lights's Count IV Prompt Payment Act Claim; Count IV of Plaintiff Northern Lights Mechanical, LLC's complaint will be dismissed as to Defendant Mingjing Industrial Group Agricultural Technology Co, LLC.

> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _____, 2021

_____
Harold Stewart, II
Justice, Superior Court

10