**2006 ME 112**

**MAGUIRE CONSTRUCTION, INC.**

v.

**Denis FORSTER et al.**

Supreme Judicial Court of Maine.

Argued: April 10, 2006.
Decided: Sept. 12, 2006.

James M. Bowie (orally), Thompson & Bowie, L.L.P., Portland, for plaintiff.

Michael R. Bosse (orally), Bernstein Shur Sawyer & Nelson, P.A., Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: CLIFFORD, DANA, ALEXANDER, CALKINS, and SILVER, JJ.

Dissent: SAUFLEY, C.J., and LEVY, J.

DANA, J.

[¶ 1] Denis and Linda Forster appeal from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) denying their motion to dismiss Maguire Construction, Inc.'s original complaint for insufficient service of process and to dismiss the mechanic's lien count of Maguire's amended complaint as untimely. Maguire never served the Forsters with the original complaint. Although Maguire did serve the amended complaint, the Forsters brought their motion to dismiss, and this appeal, in an attempt to discharge the lien on their real estate. Maguire seeks to dismiss the appeal as interlocutory. We deny Maguire's motion to dismiss the appeal, and we affirm the judgment.

## I.  CASE HISTORY

[¶ 2] Maguire filed a complaint against the Forsters on September 15, 2004. Count III of the complaint claimed a lien pursuant to 10 M.R.S. § 3255(1) (2005) [1] on the Forsters' property in Kittery Point to secure $179,472.06 in construction costs.

1. Title 10 M.R.S. § 3255(1) (2005) provides that a mechanic's lien, as established by 10 M.R.S. § 3251 (2005),

   may be preserved and enforced by action against the debtor and owner of the property affected and all other parties interested therein, filed with the Superior Court ... in

   the county ... where the house, building or appurtenances ... on which a lien is claimed is situated within 120 days after the last of the labor or services are performed or labor, materials or services are so furnished ....

The complaint alleged that Maguire had last provided services to the Forsters on May 18, 2004. Maguire did not file a return of service for the original complaint, but instead filed an amended complaint on March 10, 2005, served the Forsters with it on March 24, and filed a return of service on April 6. The amended complaint contained an identical lien claim in Count III.

[¶ 3] The Forsters moved to dismiss the original complaint and the lien count of the amended complaint and to discharge the lien. They contended that the original complaint should be dismissed for insufficiency of service of process and that, if the original complaint was dismissed, the lien would be untimely because the amended complaint was not filed within the 120 days provided in section 3255(1). With their motion papers, the parties submitted affidavits giving competing accounts of their negotiations after the original complaint was filed. The Forsters also submitted a copy of Denis Forster's October 26, 2004, letter to Maguire's counsel, conditionally agreeing to accept service of the complaint. After oral argument, which was not recorded, the court denied the motion without written explanation. The Forsters then brought this appeal.

## II. MOTION TO DISMISS APPEAL

[¶ 4] Maguire has filed a motion to dismiss the appeal, arguing it does not fall within any exception to the final judgment rule. We have only once addressed an appealability issue related to a mechanic's lien. In *Buckminster v. Acadia Village Resort, Inc.*, 565 A.2d 313, 314–15 (Me. 1989), we held that an order requiring a plaintiff architect to dissolve his mechanic's lien was within an exception to the final judgment rule, by analogy to the settled law that orders dissolving or denying attachments or trustee process are im-

mediately appealable. That holding is not controlling here because the irreparable harm to a plaintiff who loses his mechanic's lien, which cannot be revived after it is dissolved, *id.* at 315, is different than the harm to a defendant whose property is encumbered by such a lien. The analogy between a mechanic's lien and a real estate attachment is nevertheless compelling.

[¶ 5] An order granting or refusing to dissolve an attachment can be immediately appealed. *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 7, 861 A.2d 662, 665; *Plourde v. Plourde*, 678 A.2d 1032, 1034 (Me.1996); *Northeast Inv. Co. v. Leisure Living Cmtys., Inc.*, 351 A.2d 845, 851 (Me.1976). In a case not involving a final judgment issue, we strictly construed the statutory requirements for a materialman's lien because the effect of the lien was similar to "the serious potential for substantial harm to an owner-defendant" posed by a real estate attachment. *Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 37 (Me.1978) (citing *Northeast Inv.*, 351 A.2d 845). We noted that

> such a lien effectively deprives the owner of his ability to convey a clear title while the lien remains outstanding; the credit of the owner of the property subjected to the lien is impaired; the claim of lien may be used against the owner as a coercive means toward settlement of the demand.

*Id.*

[¶ 6] If anything, a mechanic's lien may be more burdensome than an attachment, because in some circumstances a mechanic's lien will take priority over a previously-recorded mortgage, while an attachment will not. *Compare Gagnon's Hardware & Furniture, Inc. v. Michaud*, 1998 ME 265, ¶ 7, 721 A.2d 193, 194 (stating that mechanic's lien has priority over mortgage if mortgagee knew of and impli-

edly consented to work) (quoting *Carey v. Boulette*, 158 Me. 204, 182 A.2d 473, 478 (1962)) *with United States v. Belanger*, 598 F.Supp. 598, 606 (D.Me.1984) (holding that, under Maine law, mortgage has priority over later-recorded attachment) (citing *First Auburn Trust Co. v. Buck*, 137 Me. 172, 16 A.2d 258 (1940)). Accordingly, an order refusing to discharge a mechanic's lien is as appropriate for immediate appellate review as an order granting or refusing to dissolve a real estate attachment.

[¶ 7] Maguire does not address the attachment analogy, but argues that an order denying a motion to dismiss for insufficiency of service of process under M.R. Civ. P. 12(b)(5) is not appealable. That may be correct as a general rule, *see Spack v. Puorro*, 1997 ME 13, ¶ 3 n. 1, 689 A.2d 589, 589, but to apply that rule here would exalt form over substance. The Forsters' motion to dismiss was filed solely as a vehicle to have the lien removed; they did not contest the adequacy of service of the amended complaint and did not contend that the non-lien counts of the amended complaint should be dismissed. Moreover, the motion included a specific request to discharge the lien. The denial of the motion is immediately appealable pursuant to an exception to the final judgment rule. We therefore deny Maguire's motion to dismiss the appeal.

### III. MOTION TO DISMISS FOR INSUFFICIENCY OF SERVICE OF PROCESS

[¶ 8] The parties disagree about the standard of review applicable to a motion to dismiss for insufficiency of service of process. We therefore clarify that the standard of review depends on the precise question at issue on appeal. What actions are legally sufficient to constitute effective service of process pursuant to M.R. Civ. P.

4 is a legal question subject to de novo review. *Brown v. Thaler*, 2005 ME 75, ¶ 8, 880 A.2d 1113, 1115. If the relevant facts are disputed, whether a plaintiff actually took the actions required to effectuate service is a question of fact, and the court's factual findings are reviewed for clear error. *See* M.R. Civ. P. 52(a). When service was insufficient, we review the court's decision whether to dismiss the complaint for abuse of discretion. *Dep't of Human Servs. v. Levesque*, 669 A.2d 756, 759 (Me. 1996); *see Jackson v. Borkowski*, 627 A.2d 1010, 1012–13 (Me.1993).

[¶ 9] The parties' arguments focus on the sufficiency of service of process rather than on the court's decision to deny the motion to dismiss. The Forsters argue that service of the initial complaint was insufficient. Maguire argues that service was sufficient because the Forsters had actual notice, received a copy of the complaint by mail, and agreed to acknowledge service but never did. Maguire is incorrect. When an action is commenced by filing the complaint, M.R. Civ. P. 3 requires that the return of service be filed within ninety days. Although a plaintiff may serve the defendant by mail, if the defendant does not acknowledge service within twenty days the plaintiff is required to effect service by another means. M.R. Civ. P. 4(c)(1). Here the facts are undisputed: no return of service for the original complaint was filed, within ninety days or thereafter, because the Forsters did not acknowledge service, and Maguire did not serve them by another method. As a matter of law, therefore, no effective service occurred until the service of the amended complaint. *See Brown*, 2005 ME 75, ¶ 11, 880 A.2d at 1116.

[¶ 10] Even though there was no effective service of the original complaint, the rules do not mandate dismissal: "If

... the return of service is not timely filed, the action *may* be dismissed on motion and notice ...." M.R. Civ. P. 3 (emphasis added); *see Levesque*, 669 A.2d at 759. In exercising its discretion to decide whether to dismiss the complaint, the court was required to consider all the relevant facts. One factor is the amount of delay before service; an excessive or unreasonable delay may require dismissal unless it resulted from mistake or excusable neglect. *See Jackson*, 627 A.2d at 1012.

[¶ 11] Here the time between the filing of the original complaint and the service of the amended complaint was slightly over six months, a delay the court could have found was not excessive or unreasonable under the circumstances. These circumstances include the same facts Maguire cites in asserting that service was sufficient: the Forsters had actual notice, received a copy of the complaint by mail, and conditionally agreed to accept service, as recounted in the letter to Maguire's counsel that the Forsters filed with the court. In addition, the parties were engaged in some sort of negotiations within the six-month period, although they disputed the extent of the negotiations.

[¶ 12] Our precedent suggests that the fact of actual notice is of central importance in reviewing the trial court's exercise of its discretion, "[b]ecause actual notice is the ultimate goal of any form of service ...." *Phillips v. Johnson*, 2003 ME 127, ¶ 24, 834 A.2d 938, 945. Thus, we have held that the technical deficiency in the service of a motion did not mandate dismissal when the defendant had timely and actual notice, *Moores v. Doyle*, 2003 ME 105, ¶ 10, 829 A.2d 260, 263; that there was no error in entering default judgment against a defendant who had actual notice and failed to raise the alleged insufficiency of service in a motion to dismiss, *Peoples*

*Heritage Sav. Bank v. Pease*, 2002 ME 82, ¶ 14, 797 A.2d 1270, 1275; and that a defendant waived the technical insufficiency of service when she had actual notice, negotiated with the plaintiff, and participated in the action, *Peoples Heritage Sav. Bank v. White*, 1997 ME 204, ¶¶ 3–4, 704 A.2d 318, 319.

[¶ 13] Considering the undisputed fact that the Forsters had actual notice of the commencement of the action, along with all the other relevant circumstances disclosed by the record, we cannot say that the court abused its discretion in denying the motion to dismiss.

[¶ 14] We note that this conclusion in no way undermines our past insistence that plaintiffs strictly comply with the statutory timeframe for commencing a mechanic's lien action. *See Pineland Lumber Co. v. Robinson*, 382 A.2d 33, 36 (Me.1978); *Pendleton v. Sard*, 297 A.2d 889, 896 (Me. 1972); *Bellegarde Custom Kitchens v. Leavitt*, 295 A.2d 909, 910–14 (Me.1972); *see also John W. Goodwin, Inc. v. Fox*, 642 A.2d 1339, 1341–42 (Me.1994) (Clifford, J., dissenting). Maguire commenced its action against the Forsters in a timely fashion by filing its complaint, *see* M.R. Civ. P. 3, within 120 days of the last labor or services it performed, as required by 10 M.R.S. § 3255(1). Nothing in section 3255, any other lien statute, or our case law requires that a timely-filed mechanic's lien complaint be *served* within 120 days.

The entry is:

Motion to dismiss the appeal denied. Judgment affirmed.

LEVY, J., with whom, SAUFLEY, C.J., joins, dissenting.

[¶ 15] The Court's decision to permit interlocutory appellate review in the circumstances of this case arises from a desire to ameliorate the burdens mechanic's

liens place on property owners. ·For the following three reasons, I believe that this new and unconditional opportunity for interlocutory appellate review will have the paradoxical effect of imposing greater burdens on all of the parties to a mechanic's lien action.

[¶ 16] First, M.R. Civ. P. 3 provides that when a complaint or return of service is not timely filed, the action *may* be dismissed on motion and notice. We review a trial court's exercise of the discretion invested in it by Rule 3 through the deferential lens of the abuse of discretion standard. *See Dep't of Human Servs. v. Levesque,* 669 A.2d 756, 759 (Me.1996); *Qualey v. Sec'y of State,* 628 A.2d 1035, 1037 (Me.1993). Consequently, the likelihood that we will upset a trial court's decision to deny a motion to dismiss based on Rule 3 is not great. There is no compelling reason to create a new opportunity for appellate review of a trial court's exercise of the discretion established by Rule 3 at the front-end of contested litigation.

[¶ 17] Second, although judicial liens, such as an attachment or trustee process, and statutory liens, such as a mechanic's lien, bear some similarity, they are fundamentally different creatures. The mechanic's lien serves to provide contractors, subcontractors, and material suppliers "a secure and immovable interest in the improved real estate to protect their right to payment." 3 STEVEN STEIN, CONSTRUCTION LAW ¶ 9.01 (2006).[2] Unlike judicial liens,

mechanic's liens are specifically intended to serve the social purpose of encouraging individuals and businesses to engage in the frequently leveraged and time-consuming undertakings associated with the construction trades. This is why we "have long adhered to the principle that the mechanic's lien statutes will be construed and applied liberally to further their equity and efficacy, when it is clear that the lien has been honestly earned, and the lien claimant is within the statute." *Twin Island Dev. Corp. v. Winchester,* 512 A.2d 319, 323 (Me.1986) (quotation marks omitted).[3]

[¶ 18] Accordingly, although judicial attachments and mechanic's liens are similar, they are fundamentally different because mechanic's liens are designed to be more certain in order to advance a specific social need. By making mechanic's liens actions subject to early appellate review and, consequently, more expensive to keep in effect, we necessarily reduce the level of business risk that contractors, subcontractors, and material suppliers will accept when deciding whether to undertake construction projects.

[¶ 19] Finally, and perhaps most importantly, interlocutory appellate review regarding mechanic's liens will significantly delay the completion of cases and increase the cost of litigation. Unlike an interlocutory appeal taken from an order approving, dissolving, or denying an attachment or trustee process, an interlocutory appeal taken from an order denying a motion to dismiss a mechanic's lien claim stays all

---

2. The mechanic's lien "is an American innovation [that] owes its origination to Thomas Jefferson and James Madison. In 1791, as an incentive for the building of the new capitol in Washington, D.C., a lien to 'encourage master builders to contract for the erecting and finishing of houses' was established by statute." 3 STEVEN STEIN, CONSTRUCTION LAW ¶ 9.01 (2006).

3. This social purpose is also reflected in our bankruptcy laws. Unlike a judicial lien, a mechanic's lien that qualifies as a "statutory lien" under 11 U.S.C. § 101(53) of the Bankruptcy Code is generally not avoidable in bankruptcy. *See In re Schick,* 418 F.3d 321, 323 (3d Cir.2005); *Klein v. Civale & Trovato (In re Lionel Corp.),* 29 F.3d 88, 94 (2d Cir. 1994).

proceedings at the trial court level. *See* M.R.App. P. 3(b). Here, the Forsters' motion to dismiss was denied by the trial court on July 1, 2005. It has taken more than a year for the resulting interlocutory appeal to be decided, during which time there has been no development of this case at the trial court level. If we had summarily dismissed this appeal as we often do for appeals that are obviously interlocutory and not within any of the established exceptions to the final judgment rule, it is likely that a final judgment would have already been or would soon be rendered by the Superior Court in this case.

[¶ 20] Abandoning our long-standing practice of summarily dismissing this type of interlocutory appeal will have the unfortunate effect of diverting the parties' resources and the State's judicial resources from achieving a final, timely, and less costly resolution of the parties' dispute. Although the Court's decision to entertain this appeal is motivated by a well-intentioned desire to reduce the burdens of mechanic's liens, I conclude that interlocutory appeals in mechanic's liens cases will produce the opposite effect. Accordingly, I respectfully dissent.