STATE OF MAINE                                  SUPERIOR COURT
LINCOLN, ss.                                    LOCATION: WISCASSET
                                                DOCKET NO. CV-19-05

RICHARD MOORE                    )
                                 )
            Plaintiff,           )
                                 )
      v.                         )          **ORDER ON PENDING MOTIONS**
                                 )
DANNY LESTER                     )
                                 )
            Defendant.           )


## Procedural Background

Richard Moore (Plaintiff) filed a five count complaint (Complaint) on December 31, 2018. His Complaint alleges: (I) tortious interference; (II) breach of fiduciary duty; (III) breach of contract; (IV) fraud; and (V) negligence. On January 22, 2019, Danny Lester (Defendant) filed a Motion to Dismiss (MTD). A day later, January 23, 2019, Defendant filed his Answer, Affirmative Defenses, and a six-count counterclaim. Plaintiff timely objected to the MTD and Defendant timely replied. On February 11, 2019, Plaintiff filed a Motion for Leave to Amend Complaint (MTA). He requests leave to add additional facts to his existing claims and to allege a sixth count for "fraud/promissory estoppel." Defendant objects to the MTA and argues that amendment is futile because the Complaint would still be subject to dismissal. Defendant filed his Answer to Counterclaim and Affirmative Defenses on February 15, 2019. In response, Defendant filed a Motion to Strike (MTS) the Plaintiff's Answer and Affirmative Defenses as untimely served upon him, for being two days late. In his objection to the MTS, the Plaintiff has moved for an enlargement of time to file his Answer. All are pending before the court.

1

## Factual Background

The following facts are taken from the Plaintiff's Complaint and viewed in the light most favorable to him.

In 2012, Plaintiff and Defendant agreed to purchase Wiscasset Village Antiques (WVA) as a new business venture. Compl. ¶ 1. Both parties put money towards the business for a fifty-percent share of the business. ¶¶ 4-5. Plaintiff negotiated a lease with the Nicolls Trust, the owner of the building that housed WVA. ¶ 6. Thereafter, the Plaintiff arranged for preparation of the Operating Agreement (OA) and the formation of the limited liability company (LLC). ¶ 8. The parties established WVA, LLC on May 27, 2015. ¶ 9. As a result of Plaintiff's contributions, WVA improved and had greater success than prior years. ¶ 12. Plaintiff purchased a truck for the Defendant's use in the business and WVA, LLC paid the lease. ¶ 11. In the first lease (Original Lease) that the Plaintiff negotiated, he personally guarantied the lease. ¶ 16. When the Original Lease neared its end in May 2018, the Nicolls Trust was not interested in extending the lease term and listed the building for sale. ¶ 18.

In summer 2018, the Plaintiff approached the Defendant in an attempt to work out an offer where they would both purchase the property that WVA, LLC rented if the Defendant could come up with half of the down payment. ¶ 19. The Defendant responded that it was not plausible for him to come up with the money. ¶ 20. The Plaintiff then told the Defendant that he would likely purchase the building and he would allow the Defendant to buy shares in the future if he wished. ¶ 21. In November 2018, the Nicolls Trust informed the Plaintiff that they had a potential buyer for the building, and subsequently informed him that they received a deposit for the sale of the same. ¶¶ 22-23. As a result, the Plaintiff scouted other properties to move WVA to, and looked at a property with the Defendant on November 14, 2018. ¶¶ 24-25. After this meeting, the

2

Defendant informed the Plaintiff that he was buying the building from the Nicolls Trust, he had created a new S-Corporation to purchase the building, and he was going to evict WVA. ¶¶ 26-27. Faced with no other options in the situation, Plaintiff was forced sell his shares in WVA, LLC to the Defendant for $20,000 and payment of the remaining lease on the company truck that WVA purchased for the Defendant. ¶ 28.

## Discussion

### I.     Motion to Dismiss

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the allegations in the complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (internal citations omitted). The court shall "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123, 127. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* Claims involving fraud are held to a higher pleading standard and the circumstances constituting it must be pled with particularity. *See* M.R. Civ. P. 9(b); *Bean v. Cummings*, 2008 ME 18, ¶¶ 10-11, 939 A.2d 676.

### A. Does Improper Service Require that the Court Grant the MTD?

Whether actions are legally sufficient to constitute process under M.R. Civ. P. 4 is a question for the court. *Maguire Constr., Inc. v. Forster*, 2006 ME 112, ¶ 8, 905 A.2d 813. Even if a complaint is not effectively served, the court is not required to dismiss the complaint. *See id.* ¶ 9. Actual notice is the goal of any form of service, and technical

3

deficiencies do not defeat this goal. *Id.; Moores v. Doyle*, 2003 ME 105, ¶ 10, 829 A.2d 260; *Peoples Heritage Sav. Bank v. White*, 1997 ME 204, ¶¶ 3-4, 704 A.2d 318. If service is insufficient, the Law Court reviews the trial court's decision to dismiss the complaint for an abuse of discretion. *Maguire Constr., Inc.*, 2006 ME 112, ¶ 8, 905 A.2d 813.

The Defendant correctly argues that the Plaintiff failed to properly serve him because two exhibits that were supposed to be attached to the Complaint were not served upon him, nor was the notice regarding Electronic Service. However, these are technical deficiencies that do not warrant dismissal of the Complaint. Defendant had actual notice of the claims against him and was provided the attached exhibits within days of the Complaint being served upon him. The Defendant is represented by counsel who is familiar with Electronic Service, and has been represented through the events leading up to the instant matter. Insufficient service does not require that the Complaint be dismissed.

## B. What Documents May be Considered in the MTD Under the *Moody* Exception?

In support of his MTD, the Defendant attaches Exhibits A through M. He argues that the court may consider these documents under the *Moody* exception without converting the MTD into a motion for summary judgment. In response, the Plaintiff argues that the *Moody* exception is narrow and does not allow consideration of the Defendant's exhibits.

In *Moody v. State Liquor & Lottery Commission*, the Law Court reviewed the trial court's decision to consider the front and back of an unscratched lottery ticket, and lottery ticket rules and regulations attached to the defendant's motion to dismiss. 2004 ME 20, ¶¶ 4-5, 843 A.2d 43. The trial court determined that when it accepted the facts as alleged in the plaintiff's complaint as true, the contract printed on the lottery ticket was unambiguous and showed that the plaintiff's ticket was non-winning, therefore the

4

defendant did not breach the contract. *Id.* ¶ 5. The trial court dismissed the breach of contract claim. *Id.* On appeal, the plaintiff argued that the court erred by considering the documents attached to the motion to dismiss, and that consideration of those documents converted the motion into one for summary judgment. *Id.* ¶ 6. The defendant responded that it was necessary to consider those documents because they completed the contract that the plaintiff brought into issue, and because the documents were "a matter of public record, which may be judicially noticed in a motion to dismiss." *Id.*

In analyzing whether consideration of the documents was proper, the Court began with the general rule that if the trial court turns to materials outside the pleadings, the motion is converted into one for summary judgment. *Id.* ¶ 8. It then explained that federal courts occasionally look to extraneous documents on a motion to dismiss without treating it as a summary judgment motion. *Id.* ¶ 9. The Court reasoned that

> [t]his narrow exception allows a court to consider official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint, without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged. These documents will merge into the pleadings. The purpose for this exception is that if courts could not consider these documents, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

*Id.* ¶ 10 (internal citations and quotations omitted). The reason that attached documents generally convert a motion to dismiss into one for summary judgment is concern about the plaintiff having an opportunity to respond to new facts raised by the defendant. *Id.* ¶ 11. But, when the "document is referenced in the complaint, is central to a plaintiff's claim, or is a public document, the plaintiff should have notice of the contents." *Id.* So long as the plaintiff does not challenge the authenticity of the aforementioned documents, they may be properly considered on a motion to dismiss without converting it into a motion for summary judgment. *Id.*

At the outset, the Plaintiff does not challenge the authenticity of Exhibits A through M. The Defendant correctly maintains that any filings with the State or the court are public records, therefore they will be considered by the court. The Operating Agreement of WVA and its Certificate of Formation were the exhibits attached to the Complaint, so those will also be considered by the court. The Defendant maintains that the other exhibits are central to the Plaintiff's claim, and points to various Superior Court caselaw that considered operating agreements, releases, and leases on motions to dismiss. The following is a list of the Defendant's exhibits and a discussion about what will be considered by the court.

- Ex. A: Original Lease (January 27, 2016)
- Ex. B: Lease Amendment (undated, but to take effect May 31, 2018)
- Ex. C: WVA LLC Operating Agreement (adopted May 28, 2015)
- Ex. D: Purchase and Sale Agreement (P&S) for Plaintiff's shares of WVA (November 30, 2018)
- Ex. E: Earnest Money Deposit check per the Purchase and Sale Agreement
- Ex. F: Bill of Sale and Assignment of All Rights for WVA (December 14, 2018) (Release)
- Ex. G: WVA Resolution of Members
- Ex. H: Plaintiff's Receipt and Acknowledgement for the Purchase and Sale Agreement (December 14, 2018)
- Ex. I: Bill of Sale for F150 Truck (December 14, 2018)
- Ex. J: Non-Compete Agreement (December 14, 2018)
- Ex. K: WVA Filings with the Maine Secretary of State
- Ex. L: WVA Certificate of Formation (filed May 27, 2015)
- Ex. M: Summons and Proof of Service for current action

The Plaintiff plainly references the Original Lease, Exhibit A, in his Complaint. ¶¶ 6, 14-16, 18. The court will consider this document. Although the Lease Amendment,

Exhibit B, is not directly referenced in the Complaint, it is mentioned in the Plaintiff's allegation of tortious interference, when he states that he and a third party, the Nicolls Trust, "had a valid contract for the lease of the building housing [WVA], LLC." ¶ 31. The Lease Amendment is central to the Plaintiff's tortious interference claim as it amends the contract that was contained in the Original Lease, which was the Plaintiff brought into issue. It will be considered by the court.

WVA's Operating Agreement, Exhibit C, and the Certificate of Formation, Exhibit L, are the same exhibits that were attached to the Plaintiff's Complaint and will be taken into account in deciding the MTD. Exhibit K, WVA's filing with the Secretary of State is a public document as is Exhibit M, the Summons and Proof of Service that were filed with this court, and will also be considered.

The remaining exhibits, D though J, all pertain to the Plaintiff's sale of his shares to the Defendant, and the payoff of the company truck lease. None of these documents are specifically referenced in the Plaintiff's Complaint. He generally references that he sold his shares in WVA, LLC for $20,000 and the Defendant's payment of the remainder of the lease on the truck. ¶ 28. Regarding his fraud claim, he alleges "financial damage to the Plaintiff including but not limited to the dissolution of the business, loss of shares in the business, . . . loss of investment in the business and loss of an occupation." ¶ 52. The Defendant argues that because exhibits D through J show the circumstances and details of the sale and the relationship between the parties, that these should be reviewed by the court under the *Moody* exception "to evaluate the sufficiency of Plaintiff's allegations." Because these documents are neither public records nor referenced in the Plaintiff's Complaint, the Defendant relies on *Moody* for the proposition that "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Moody,* 2004 ME 20, ¶ 10, 843 A.2d 43, (quoting

7

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)).

In response, the Plaintiff conflates documents that are subject to the *Moody* exception as those that are "official public document[s] that are central to the Plaintiff's claim." He argues that Exhibit F, the Release, is not a public document, and because it was not referenced in his Complaint, that it is not central to his claims. The court does not accept this reasoning. In *Moody*, the plaintiff referenced the lottery ticket in his complaint and the lottery rules and regulations were public record. However, the Law Court explicitly listed "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint" as those that could be properly considered on a motion to dismiss without conversion into one for summary judgment. *Moody*, 2004 ME 20, ¶ 11, 843 A.2d 43. Because this is a list of three types of documents, any document that falls into <u>one</u> of these categories meets the exception, even though some documents, like the lottery ticket in *Moody*, may fall into more than one of these categories.

The Plaintiff obviously has notice of Exhibits D through J—he signed or acknowledged receipt of all of them—so there is no concern that these are new facts raised by the Defendant, to which the Plaintiff has not had an opportunity to respond. These documents may be dispositive of the Plaintiff's claims, and if not considered, could allow him to move forward with a legally deficient claim because he did not attach the documents to his Complaint. Because of the Plaintiff's reference to "loss of shares" and the buyout of the truck, and since the Plaintiff has notice of all these documents, this court will consider Exhibits D through J. Otherwise, it could allow a legally deficient claim to survive a motion to dismiss.

## C. Is the Plaintiff Prevented From Pursuing any Claims Against the Defendant?

The Defendant maintains that because he purchased all of the Plaintiff's shares in WVA, he signed both the Purchase and Sale Agreement (P&S) and the Bill of Sale and Assignment of All Rights, and because he complied with the terms of the P&S, that the Plaintiff may not maintain any claims against him. The Plaintiff responds that the P&S is a single document that does not incorporate any other documents, and that the release language in the P&S applies only to claims regarding a failure to perform under the P&S.

Based on a plain reading of the unambiguous documents, the Plaintiff is correct. The release language in paragraph 15 of the P&S clearly applies only to claims relating to a breach of the P&S:

> 15. In the event of the failure of the [Defendant] to perform their obligations hereunder, then the [Plaintiff's] remedies for damages shall be limited to the retention of the earnest money deposit paid by the [Defendant] in accordance with paragraph 4. Upon receipt of such deposit from the escrow agent, then the [Plaintiff] shall be deemed to have released any and all claims arising hereunder.

This paragraph clearly contemplated the remedies available to the Plaintiff in the event that the P&S fell through because of the Defendant's failure to comply with its terms. The P&S made clear that in that singular event, the Plaintiff could not bring a claim to recover anything more than the earnest money deposit, and released his claims in regards to the P&S if it was breached.

Turning to Exhibit F, the Bill of Sale and Assignment of All Rights, even if it was incorporated into the P&S as the Defendant claims, the Release does not impact the Plaintiff's current claims against the Defendant. The Bill of Sale and Assignment of All Rights states that it is made "solely for the purpose of consenting to the alienation hereunder." After outlining and explaining the alienation article contained within the Operating Agreement, the parties agreed to the following:

9

4. Representations and Warranties.

(a) The [Plaintiff] hereby represents and warrants to [Defendant] that the [Plaintiff] owns his right, title and interest in and to the Interest, free and clear of any lien, encumbrance, security interest or adverse claim of any kind or nature, and has the full right, power, and authority to transfer and assign his entire right, title, and interest in the Interest and agree to release, indemnify, and hold [Defendant] and WVA harmless from any liability arising or caused by [Plaintiff's] actions prior to December 31, 2018.

Ex. F (emphasis added). First, this entire paragraph applies only to the interest that the Plaintiff had in the shares; he represented that they were his to sell, free of any encumbrance. The purpose for this representation was because the Bill of Sale and Assignment of All Rights addressed the consent of the parties to the alienation of members within WVA. Second, the "release" related solely to the Plaintiff's actions regarding the transfer of his interest in WVA. The current claims against the Defendant are for his actions, not the Plaintiff's. The Defendant's characterization of this "release" is out of context. Moreover, to accept the Defendant's reading of this paragraph would impermissibly broaden it to cover the Defendant's actions, as well as the Plaintiff's. The court declines to accept such a reading.

In hindsight, the Defendant surely wishes that he contracted for a release that covered all of his actions leading up to the purchase of Plaintiff's shares. However, he did not. The MTD is denied so far as it is based on the Defendant's interpretation of the Bill of Sale and Assignment of All Rights as precluding the Plaintiff's claims.

**D. Does the Plaintiff State a Claim for Which Relief May be Granted?**

Because the court will consider all the documents attached to the Defendant's MTD, these documents have "merge[d] into the pleadings." *Moody*, 2004 ME 20, ¶ 10, 843 A.2d 43. The court views the Complaint, and Exhibits A through M, as true and in the

10

light most favorable to the Plaintiff, to analyze whether the Plaintiff has stated a claim upon which relief may be granted.

### i. Count I: Tortious Interference

To state a claim for tortious interference with a prospective economic advantage, a plaintiff must show "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400 (quoting *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110). When fraud is alleged, the plaintiff is required to state the circumstances amounting to fraud with particularity. M.R. Civ. P. 9(b).

The Plaintiff alleges that a valid contract and prospective advantage existed between him and the Nicolls Trust. He also claims a contract existed between him and the Defendant, and that he has stated the elements of fraud with particularity. Predictably, the Defendant disagrees. Each issue is discussed in turn.

### a. Tortious Interference with the Nicolls Trust

The Plaintiff maintains that he had a valid contractual relationship with the Nicolls Trust as landlords in both his capacity as a member/manager of WVA, and in his personal capacity because he signed the Original Lease as a guarantor. He contends that the Lease Amendment still left him with a contractual relationship with the Nicolls Trust, and because of that and his continued negotiations to buy the property, that he was at a prospective economic advantage. He argues that the Lease Amendment, Exhibit B, did not expressly terminate "any" option to buy the premises, only the option contained in the Original Lease.

The Defendant points out that the Original Lease expired by its own terms on May 31, 2018. Exhibit A reflects this. Further, the Original Lease only gave the tenant—WVA

11

alone—an option to buy the premises, not the Plaintiff personally. Finally, the Defendant is not listed as a personal guarantor on the Lease Amendment.

Based on the facts alleged in the Complaint, viewed with the Lease Amendment, no contract or prospective economic advantage existed. Per the Plaintiff's Complaint, "[a]s the lease neared its end, the Nicolls Trust (building owners) were not interested in extending the lease term and, instead, listed the building for sale." ¶ 18. The Lease Amendment does not list the Plaintiff as a guarantor as the Original Lease did. It provides that "any option to buy the Premises under the Lease is hereby terminated." Ex. B. The Plaintiff does not allege that the Defendant caused the Nicolls Trust to list the building for sale, or to not offer a continued option to buy the premises. No prospective economic advantage existed by virtue of being a tenant signed to a lease. Plaintiff argues, unconvincingly to this court, that the "Lease Amendment did not expressly terminate any option to buy the premises but did terminate the option to buy the premises that was outlined in the original Lease." However, given the terms of the Lease Amendment, any person in the real estate market was on the same footing to buy the property as the Plaintiff, therefore he had no specific or prospective advantage to buy the property. The Plaintiff did not have a contractual relationship, or a prospective economic advantage, with the Nicolls Trust that the Defendant interfered with. Defendant's MTD count I, tortious interference, is granted so far as it relates to any interference with the Plaintiff's business relationship with the Nicolls Trust.[1]

---

[1] Further, as discussed below, in subsection C, Plaintiff fails to meet the elements necessary to show tortious interference through fraud.

### b. Tortious Interference with the Operating Agreement

The Defendant argues that because the OA was never filed with the Secretary of State's Office, that by its own terms, it never became effective and is therefore not a contract.[2] He also argues that because it is not signed, it cannot be a contract. The Plaintiff contends that many of the exhibits that the Defendant submitted in support of his MTD refer to the OA, are signed by the Defendant, and therefore constitute admissions that a contractual relationship existed between the parties.

In his Complaint, the Plaintiff alleges that the parties agreed to purchase WVA as a new business venture, and established the LLC on May 27, 2015. ¶¶ 3, 9. Some details of the agreement, such as salaries and the company truck are mentioned. ¶¶ 10-11. These allegations, viewed alongside the exhibits that the Defendant submitted with his MTD that have since merged into the pleadings, show that the OA was treated as a contract between the parties, regardless of whether it was filed with the Secretary of State. Nearly all of the documents submitted are signed by both parties in their capacities as members or managers of WVA, LLC. The P&S, Exhibit D, states that "Pursuant to Section VIII(b) of the LLC's Operating Agreement, Buyer and Seller agree to execute at closing a written consent to the sale of Seller's interest to Buyer." On the Bill of Sale and Assignment of All Rights, the Defendant's signature is below a statement explaining that he is "executing this Assignment solely for the purpose of consenting to this Assignment, such consent as is required pursuant to Article VIII(1)(b) of the WVA Operating Agreement."

---

[2] Article I, paragraph 4 is titled "Date of Formation" and provides that the "Operating Agreement shall become effective upon its filing with and acceptance by the Maine Secretary of State." Exhibit K is a list of all of WVA's filings with the Secretary of State, which shows that the Operating Agreement was never filed.

13

Viewed in the light most favorable to the Plaintiff, his Complaint combined with the Defendant's admissions documents signed in order to comply with WVA's OA, the court determines that the OA amounted to a contractual agreement.[3]

### c. Does the Plaintiff State the Elements of Fraud with Particularity?

When tortious interference through fraud is alleged, the plaintiff must show that the defendant

> (1) [made] a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Sherbert v. Remmel*, 2006 ME 116, ¶ 4 n.3, 908 A.2d 622 (quoting *Grover v. Minette-Mills, Inc.*, 638 A.2d 712, 716 (Me. 1994)).

The Defendant argues that the Plaintiff does identify any false statement, that he does not allege that any statement made was with knowledge of its falsity or in reckless disregard of its veracity, and therefore he has not alleged fraud with the necessary particularity. The Defendant further contends that the Plaintiff does not allege that the

---

[3] Moreover, the Law Court has explained that

> Pursuant to Maine contract law, an agreement is legally binding if the parties "mutually assented to be bound by all its material terms; the assent was manifested in the contract, either expressly or impliedly; and the contract was sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties." If each party communicated to the other a "distinct and common intention," the contract will be enforceable.

*Barr v. Dyke*, 2012 ME 108, ¶ 13, 49 A.3d 1280 (quoting *Stanton v. Univ. of Me. Sys.*, 2001 ME 96, ¶ 13, 773 A.2d 1045) (alterations and internal citation omitted). The Defendant assented to be bound by the material terms of the OA, as evidenced by his signatures on the forms that purported to be signed in order to comply with the OA. Implicit assent to be bound by the OA can be inferred based on the Defendant's actions, and the Plaintiff has shown a "distinct and common intention," namely to operate WVA, LLC per the OA.

Defendant's purpose was to induce him to act or refrain from acting in reliance on the representation, or whether it was material to the Plaintiff's actions. He claims that the Plaintiff has not shown that any of the Defendant's statements were material to the Plaintiff's actions, as the Plaintiff continued his attempts to buy the property on his own.

In response, the Plaintiff points to his Complaint, which alleges that in the summer of 2018, the Plaintiff tried to craft an offer with the Defendant where they would buy the property together if the Defendant came up with fifty percent of the down payment, but the Defendant told him "that it was not plausible for him to acquire the funds to finalize the purchase of the property." ¶¶ 19-20. The Plaintiff continued his efforts to buy the building, but the Nicolls Trust informed him in early November 2018 that they had a potential buyer for the building, and subsequently received a deposit for the sale. ¶¶ 22-23. As a result of this turn of events, the Plaintiff looked for other premises for WVA, toured a potential space with the Defendant on November 14, 2018, and discussed lease options with a realtor. ¶¶ 24-25. After this meeting, the Defendant told the Plaintiff that he was buying the building where WVA was located through a new S-Corporation that he established, and that he was going to evict WVA. ¶¶ 26-27. Plaintiff alleges he had no other choice in the situation but to sell his shares in WVA to the Defendant. ¶ 28.

Viewing the foregoing in the light most favorable to the Plaintiff, the Defendant stating that it was "not plausible" for him to come up with the money to purchase the property could be a false representation as Plaintiff alleged that within a few months, the Defendant had created a new S-Corporation and purchased the property. However, because the Plaintiff continued his efforts to purchase the property, this was not a material fact to the Plaintiff in his quest to buy the building. However, if it were to be considered a material fact as the Defendant actually bought the property a few months later, this may amount to the Defendant's reckless disregard of the veracity of his

15

statement that he could not come up with the funds. It can reasonably be inferred that the Defendant made the statement to induce the Plaintiff to refrain from attempting to purchase it, or to seek other options so that the Defendant could buy it himself.

Assuming that the Defendant's statement was a material fact to the Plaintiff, he does not meet the last element of fraud. Even if he did rely on the statement as true, and the court accepts that it was a material fact, the Plaintiff still continued efforts to buy the property. He does not show justifiable reliance on the statement and does not allege that he would have been able to buy the property but for reliance on the Defendant's statements. The Plaintiff does not claim damages in the form of a missed real estate opportunity which is what the Defendant's representation related to, but instead that because the Defendant bought the property and threatened eviction, he had to sell his shares in WVA. These damages are not a result of the Plaintiff justifiably relying on the Defendant's representation as true and acting upon it. Because the Plaintiff does not allege the necessary elements to show tortious interference through fraud, the court dismisses count I as it relates to the OA as a contract between the parties.

### ii.   Count II: Breach of Fiduciary Duty

Whether one party owes another a fiduciary duty is a question of law. *McPherson v. McPherson*, 1998 ME 141, ¶ 8, 712 A.2d 1043, 1045. To survive a motion to dismiss on a claim of breach of fiduciary duty, a plaintiff must show "specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 21, 738 A.2d 839.

The Defendant maintains that according to the OA, fiduciary duties are imposed on managers, but not members, of WVA, LLC. According to the OA, the Defendant is only a member and therefore owes no fiduciary duties. He supports his position with

16

Superior Court caselaw and the Maine Limited Liability Company Act (MLLCA). In response, the Plaintiff states that because the parties established an LLC, a pay scale, bought a company truck, ran the company together, and treated the OA as a contractual agreement, that he has alleged facts sufficient to show that the Defendant owed him a fiduciary duty.

The Plaintiff is incorrect. According to the OA, and the Plaintiff has not alleged otherwise, Plaintiff is the manager of WVA, LLC and both parties are members. As the Defendant points out, the OA does not address whether members owe any fiduciary duties.[4] When an OA does not address a particular issue, the default rules within the MLLCA are gap fillers. *See. Cianchette v. Cianchette*, 2019 ME 87, ¶ 34, ___A.3d___. The MLLCA provides that

> a member not involved in the management of a limited liability company does not have a fiduciary duty to the limited liability company, or to any other member, or to another person that is a party to or is otherwise bound by a limited liability company agreement, solely by reason of being a member.

31 M.R.S. § 1559(3). Relying on this provision, the Superior Court (Cumberland County, *Mills, J.*) held that "[s]tanding alone, membership in an LLC does not give rise to a fiduciary duty." *Nisbet v. Harp Invs.*, No. CV-17-493, 2018 Me. Super. LEXIS 89 at *13 (Apr. 26, 2018). In that case, the plaintiff did not allege other facts with sufficient particularity that would give rise to a fiduciary relationship between the parties, so he could not

---

[4] The Defendant claims that the OA imposes fiduciary duties on the Plaintiff as WVA's manager. Under Article V governing management, Paragraph 5 addresses the standard of care of managers and exculpation. In its entirety, it provides that "[a]ny Member of management must refrain from engaging in grossly negligent, reckless, or intentional misconduct. Any act or omission of a Member of management that results in loss or damage to the Company or Member, if done in good faith, shall not make the Manager liable to the Members." Although this clause does not impose fiduciary duties, it restricts the actions of managers, and is aimed more at the manager's liability.

survive a motion to dismiss on his count of breach of fiduciary duty. *Id.* at *13-14. Because the plaintiff did not properly allege that the Defendant owed him fiduciary duties, he therefore failed to state a claim. *Id.* at *15.

Here, the Plaintiff does not allege other facts that give rise to a fiduciary duty. The facts he alleges relate to the parties' participation in an LLC, and the MLLCA provides that members do not owe the LLC, other members, or anyone else bound by the OA a fiduciary duty solely because they are a member. He has failed to state a claim of breach of fiduciary duty. The court grants the Defendant's MTD on count II.

### iii.    Count III: Breach of Contract

To recover on a breach of contract claim, the Plaintiff must show (1) the existence a legally binding contract in which both parties mutually assent to be bound by the terms of the agreement; (2) the defendant breached a material term of the contract; and (3) the defendant's breach caused the plaintiff damages. *Tobin v. Barter*, 2014 ME 51, ¶¶ 9-10, 89 A.3d 1088.

As discussed above in subsection I(D)(i)(b), the court has determined that the OA is a contract between the Plaintiff and the Defendant. The parties spend the bulk of their arguments on whether a contract existed, and not whether there was a breach. The Plaintiff claims to have alleged breach of contract in his Complaint. The extent of these allegations amount to "Defendant intentionally engaged in behaviors that breached the contract between Plaintiff and Defendant; . . .Defendant breached the contract between Plaintiff and Defendant." ¶¶ 45-46. Although the breach of contract count incorporates the prior allegations,[5] nothing in the OA prohibits the Defendant's actions that the

---

[5] These include that the Defendant negotiated the independent purchase of the building housing WVA while being a partner in said business, and that he engaged in efforts contrary to the best interests and financial interests of WVA.

Plaintiff complains of. However, this is not likely fatal to the Plaintiff's breach of contract claim.

The MLLCA attempts "to give maximum effect to the principles of freedom of contract and to the enforceability of limited liability company agreements." 31 M.R.S § 1507(1) (2018). Therefore, the OA of an LLC "governs relations among the members as members and between the members and the limited liability company." § 1521(1). This general rule is subject to the exceptions in § 1522, which governs provisions of the MLLCA that may not be modified by an LLC's OA. Under that section, "there exists an implied contractual covenant of good faith and fair dealing in every limited liability company agreement." § 1522(2).

Because of the implied covenant of good faith and fair dealing that exists within the OA, and given that the Plaintiff has alleged that the Defendant secretly bought the property housing WVA, and then threatened to evict WVA, the court denies the MTD as to the breach of contract claim.[6]

### iv.    Count IV: Fraud

As discussed in section I(D)(i)(c), accepting the Plaintiff's allegations in the Complaint as true, and viewing them in the light most favorable to him, he has not met the elements of fraud. Even if the Plaintiff treated the Defendant's statement that he could

---

[6] Other Superior Courts have taken this approach as well. *See Meridian Medical Systems, LLC v. Kenneth Carr & Applied Thermologic*, BCD-CV-14-37 2018 Me. LEXIS 61, at *11 (Bus. & Consumer Ct. Aug. 17, 2018, *Murphy, J.*) (denying a third-party defendant's motion to dismiss a breach of contract claim because although no provision of the OA encompassed the implied covenant of good faith and fair dealing, the covenant existed in all LLC agreements regardless, and the third-party plaintiff asserted facts to show a claim for breach of the implied covenant of good faith and fair dealing); *see also Brown v. Grover*, No. CV-12-35, 2013 Me. Super. LEXIS 81 (May 22, 2013) which was affirmed by a memorandum of decision on appeal as the trial court did not err in "finding that Brown breached the implied contractual covenant of good faith and fair dealing contained in every limited liability company agreement." *Brown v. Grover*, Mem-14-61 (May 8, 2014).

not come up with the funds to purchase the property as material, it is clear that the Plaintiff continued to attempt to buy the property himself.[7] The damages that the Plaintiff complains of are not tied to the Defendant's statement that he could not purchase the building. The damages that the Plaintiff complains of, namely having to sell his shares in WVA, are a result of the Defendant's eviction notice, and not because the Plaintiff justifiably relied on the Defendant's representation as true. The court grants the Defendant's MTD on count IV, fraud.

### v. Count V: Negligence

The Plaintiff's negligence claim is contingent on the court deciding that the Defendant owed him a fiduciary duty. Plaintiff alleges that "Defendant breached the fiduciary duty owed to Plaintiff . . . ." Compl. ¶ 55. He does not allege any other duty. Because the court has determined that the Defendant did not owe the Plaintiff a fiduciary duty, the court grants the Defendant's MTD on count V. Plaintiff does not state a claim upon which relief may be granted, as no duty is owed.

### II. Is the Plaintiff's Motion to Amend the Complaint Futile?

A party must obtain leave of the court to amend his complaint after a responsive pleading is served, and "leave shall be freely given when justice so requires." M.R. Civ. P. 15(a). "Courts and commentators have repeatedly stressed that the Rule requires that leave to amend be liberally granted." *Barkley v. Good Will Home Asso.*, 495 A.2d 1238, 1240 (Me. 1985). It is within the trial court's discretion whether to grant a motion to amend. *Diversified Foods, Inc. v. First Nat'l Bank*, 605 A.2d 609, 616 (Me. 1992). Because the Rule

---

[7] It is irrelevant that the Plaintiff continued to look for other properties to house WVA. The Plaintiff does not allege damages as a result of viewing other properties. For example, he does not claim that he put a down payment on another property, or that he paid an agent or broker any fees to help find another property.

provides that "leave shall be freely given when justice so desires," generally, absent the moving party's bad faith or delay tactics, "the motion will be granted in the absence of undue prejudice." *Id.* However, futility of amendment may be a reason to deny a motion to amend. *Montgomery v. Eaton Peabody, LLP*, 2016 ME 44, ¶ 13, 135 A.3d 106. Moreover, when "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *Id.* (quoting *Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994) (holding that when a proposed amended complaint fails to state a claim for relief the trial court properly denied the plaintiffs' motion).

The Plaintiff seeks to amend his Complaint to allege additional facts specific to the counts of tortious interference, fraud, negligence, and breach of contract. He additionally seeks to add a count of promissory estoppel which would allege "that the Defendant's actions of inducement related to their business relationship and tenancy of Wiscasset Village Antiques, LLC, amounted to fraud/promissory estoppel."

The Defendant argues that Plaintiff's amendment would be futile because his MTD "addresses the business relationship, contractual obligations, tenancy, and each allegation's legal deficiency in allowing Plaintiff to recover on any theory of law" and that the promissory estoppel claim would be subject to dismissal based on the pleadings, motions, and exhibits already before the court. Additionally, so far as Plaintiff is requesting amendment to add a fraud allegation, the Defendant argues that the motion is deficient because the Rules of Civil Procedure require more than a generic description of fraud, and plaintiff has not given it any particularity.

### A. Plaintiff's MTA for Fraud

The Superior Court (Cumberland County, *Cole, C.J.*) has held that "[p]rocedurally, a party seeking to amend its complaint to include a fraud count must provide . . . a

21

description of the fraud with particularity in its motion to amend [pursuant to] M.R. Civ. P. 9(b)."[8] *Anderson v. Cigna Healthcare of Maine*, No. CV-04-685, 2005 Me. Super. Lexis 139, at *8, (Oct. 27, 2005). There, the plaintiff provided enough particularity for a count of fraud in her motion to amend when she asserted that the defendant "altered a material form sent by [her] physician indicating the prescribed dosage of medication, while at the same time maintaining that the physician reduced the dosage."

Here, it is not even clear that Plaintiff is attempting to amend his complaint to add an additional count of fraud, as in his MTA he specifically states that he wants to add a count of promissory estoppel, and then a few sentences later says that the Defendant's actions amount to "fraud/promissory estoppel." As the Defendant points out, he has not given any substance to the fraud allegation, let alone particularity, required by M.R. Civ. P. 9(b). The Plaintiff's MTA is denied so far as it relates to an additional count of fraud.

### B. Plaintiff's Motion to Amend for Promissory Estoppel

"Promissory estoppel is a contract doctrine invoked to enforce promises which are otherwise unenforceable so as to avoid injustice." *Cottle Enters. v. Town of Farmington*, 1997 ME 78, ¶ 17 n.6, 693 A.2d 330. Maine has adopted the Restatement (Second) of Contracts' formulation of promissory estoppel. *Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me. 1978). Therefore, a plaintiff states a claim if he can show

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

---

[8] Maine Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

*Id.* The relied upon promise does not need to be express and may be implied from the promisor's conduct. *June Roberts Agency v. Venture Props.*, 676 A.2d 46, 50 (Me. 1996).

Because the court has concluded that the Plaintiff's action is not precluded by virtue of a release, the court grants the MTA to allow for a count of promissory estoppel. Despite the Defendant's assertions that his MTD squarely addresses a promissory estoppel claim, this is not the case. Plaintiff's Complaint alleges no promise that induced action or forbearance, nor does the Defendant's MTD address any promise. The court cannot say that Plaintiff's MTA to add a count of promissory is futile. Further, as this case is early in the stages of litigation, the Defendant is not prejudiced by the court's grant of the MTA.

### C. Plaintiff's MTA to Add Additional Facts to Claims in the Complaint

The Plaintiff's MTA to add facts to the breach of contract claim is granted. Because the Plaintiff has not moved to amend count II, fiduciary duty, and the negligence count is contingent on a duty that is not owed, the court denies the Plaintiff's MTA to add facts to the negligence claim. Regarding the Plaintiff's MTA to add facts to the tortious interference claim, the court denies it as futile because no contract or prospective economic advantage existed with the Nicolls Trust and the Plaintiff cannot establish a causal connection between his damages and alleged reliance on the Defendant's representation. Because Plaintiff did not include a description of fraud with particularity in his MTA to add facts to the fraud claims, the court denies the MTA in that regard. *See* Section II of this Order.

### III. Defendant's Motion to Strike Plaintiff's Answer to Counterclaim and Affirmative Defenses

Defendant filed his Counterclaim and Affirmative Defenses on January 23, 2019. Plaintiff filed his Answer and Affirmative Defenses on February 15, 2019. Plaintiff served

the foregoing Answer on the Defendant via email and regular mail on February 14, 2019. Twenty days from January 23 is February 12, 2019.[9] Defendant argues that the court should grant his motion to strike the Plaintiff's Answer for being two days late. The Plaintiff argues that M.R. Civ. P. 5(b) gives him the option of service by mail **or** by electronic service, and that if he chooses to do both, he is allowed three days' additional time for service under M.R. Civ. P. 6(c), extending the deadline to February 15, 2019.

Defendant is correct that Plaintiff served him outside the 20 day window. As he points out, Rule 5(b)(2) provides that "Service shall be complete upon the attempted Electronic Service for purposes of the sender meeting any time period[,]" and "Electronic Service shall be complete when transmitted . . . and shall have the same legal effect as the service of an original paper document." Thus, the Plaintiff completed service on the Defendant on February 14, when he emailed his Answer and Affirmative Defenses, and is not entitled to the three day grace period that is allowed for service by mail.

Despite being correct on the Rule, the court is not persuaded by the Defendant's argument in the law. The case he cites as support for his MTS, *Boit v. Brookstone Co.*, 641 A.2d 864 (Me. 1994), is not analogous to the case at bar. There, a complaint was served on the defendant on February 27, 1992, making the answer due on March 18, 1992. *Id.* at 865. Due to various issues with the complaint being forwarded through multiple channels before getting to the legal department, no answer was filed and the court entered default judgment on March 26. *Id.* After the default, the defendant filed its answer on April 8, and on April 10 it also filed a motion to set aside the default. *Id.* Under these circumstances, the trial court denied the defendant's motion to set aside the entry of

[9] Per M.R. Civ. P. 12(a) a defendant has 20 days to serve an answer after service of the summons. Here, Plaintiff is a counterclaim defendant. "The plaintiff shall serve a reply to a counterclaim in the answer within 20 days after service of the answer . . . ." *Id.*

24

default, and granted the plaintiff's motion to strike the defendant's answer and affirmative defenses. *Id.* The Law Court undertook no meaningful discussion of the MTS but instead focused on whether the trial court properly denied the motion to set aside.

Here, the Plaintiff's Answer was filed two days late. In *Boit*, the answer was filed twenty-one days late. The Rule regarding Electronic Service did not exist until years, if not decades, after the *Boit* decision was issued. Also present here, but not in *Boit*, is the fact that the Plaintiff has filed a motion for enlargement of time to file his answer. Because of all of the foregoing, the court denies the Defendant's MTS, and grants the Plaintiff's motion for enlargement of time to file his Answer and Affirmative Defenses.

## Conclusion

The Defendant's MTS is denied. The Plaintiff's MTA is granted in part and denied in part. It is granted so far as it seeks to add a promissory estoppel claim to his Complaint and to add facts to the breach of contract claim. The MTA is denied to the extent that it seeks to add facts to any other claim, or to add a count of fraud. The Defendant's MTD is denied as to count III, breach of contract, and granted as to all other counts.

The Clerk is directed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: July 1, 2019

Daniel I. Billings, Justice
Maine Superior Court

25